OPINION
{¶ 1} Plaintiff-appellant, C. William Dawson ("appellant"), appeals from a judgment entered upon a jury verdict rendered in the Franklin County Court of Common Pleas. The judgment dismissed appellant's negligence action against defendant-appellee, Lawrence E. McNeal ("appellee"), after the jury determined that appellant's ward, Paul E. Wrona ("Wrona") was 60 percent at fault for the automobile accident subject of the action, and that appellee was 40 percent at fault.
 {¶ 2} Appellant presents two assignments of error for our review, as follows:
Assignment of Error 1
The Trial Court erred in finding that the Plaintiff Appellant was 60% negligent in that this finding is against the manifest weight of the evidence.
Assignment of Error 2
The Trial Court erred in giving an instruction for unavoidable accident.
 {¶ 3} The following relevant facts were adduced at trial. At approximately 9:00 p.m. on the evening of February 22, 2000, appellee was driving his automobile northbound on Sunbury Road at an approximate rate of speed of 40 m.p.h. in a 45 m.p.h. zone. Wrona had stopped his maroon-colored vehicle in the northbound lane of travel on Sunbury Road. Wrona's vehicle's headlights were not illuminated. Appellee struck the rear of Wrona's vehicle, propelling it into a tree. Wrona, who was sitting inside his vehicle at the time, sustained serious injuries.
 {¶ 4} According to Patrolman Al Cooper of the Mifflin Township Police Department, there were no adverse weather conditions on the night of the accident, and the road was dry. He further testified that the portion of Sunbury Road where the accident occurred is dark and unlighted, and there are no traffic control devices nearby, such as stop signs or stoplights.
 {¶ 5} Appellee provided the only testimony regarding the accident itself, and regarding what he saw prior to striking Wrona's vehicle. He testified on direct examination that he is required to wear glasses while driving, and he was wearing his glasses at the time of the accident. He did not have his radio turned on, and nothing was distracting him from driving. Appellee testified he did not see Wrona's vehicle before he struck it. He stated:
No. I didn't see his vehicle. As I came up over the rise, the little road right there at Agler and Sunbury, I still didn't ascertain there was a vehicle in the road.
* * *
I didn't really know what it was. It looked like — and this is something I've seen a number of times. It looked like somebody at the next intersection doing something. Actually, when the officer checked his lights, I remember he had to turn the flashlight off to even see whether there were lights on the back of this guy's car. You couldn't possibly have seen them.
* * *
* * * I didn't see anything until I hit it. I got out of the car. I was shocked. I got out, and I remember saying, `What happened?' I had no clue what had happened.
(Tr. at 41-43.)
 {¶ 6} On cross-examination, appellee testified as follows regarding what he did see immediately prior to striking Wrona's vehicle:
Yes, I looked down the road, and it looked like something was at the next intersection. It was something very, very dim. I mean, in fact, it looked like reflectors off of something. I didn't know whether it was an animal or what.
(Tr. at 16.) Later in his cross-examination, appellee testified as follows:
Q. And, in fact, as you approach this dimly lit thing that you saw ahead of you, you even saw a car off the road on the left, didn't you?
A. Yes.
Q. And that car didn't have its headlights on either, did it?
A. The car had its parking lights on, the — what are they called — the orange parking lights, yeah.
Q. Okay. And so you could see that, and you saw cars coming towards you from — headed south on Sunbury.
A. There was a car at least coming south on Sunbury.
Q. And that car would have gone by, it turned out to be, Mr. Wrona's car, wouldn't it, headed the opposite direction?
A. At some point, he passed Mr. Wrona's car, yeah.
Q. And that car headed south had its headlights on, didn't it?
A. That car had its headlights on.
Q. And then as you approach this dimly lit object in the roadway, you saw something else, didn't you? A person. Didn't you see a person?
A. I didn't know it was a person.
Q. Okay. You saw something moving on the road?
A. I saw something — I thought it was an animal, but an animal doesn't wear checkerboard square clothes. So as it turned out, it was a person.
* * *
Q. And, now, you had your headlights on, didn't you?
A. Um-hum.
Q. And your headlights, I guess, were both functioning, weren't they?
A. Very well.
Q. And did you have your brights on?
A. No.
Q. And why didn't you have your brights on?
A. I had flipped my brights on, but I didn't see anything else, and I just popped the switch, let it go on. But there was traffic coming, so I didn't — I wouldn't want to approach him with my brights on.
* * *
Q. And do you have a reason, after seeing something in the road, no matter how dimly it was lit, why you didn't even slow up further?
A. Oh, I'm sure I must have taken my foot off of the gas at some point, but I don't — the object that I saw did not — it didn't look like a car. It didn't even look like it was close. The person that was actually in the road was only in the road (witness clicked fingers) that long because I can't be sure that he even touched that man's car, okay? But he was out of the road that quick.
Q. Now, there's no doubt as you sit here today in your mind that that object that you — that dimly lit object that you saw ahead of you was, in fact, Mr. Wrona's motor vehicle, was it?
A. No doubt in my mind.
Q. And you hit it, didn't you?
A. Hit it, yes.
Q. And you didn't apply your brakes at all, did you?
A. Didn't see him. I hit him flat on.
(Tr. at 16-19.)
 {¶ 7} Appellee also testified on cross-examination that when he first noticed the dimly lit object that turned out to be Wrona's vehicle, he thought it was four or five blocks away. Plaintiff's counsel then asked, "[a]nd it turned out to be how far?" Appellee responded:
A. I don't know that. All I know is I remember saying, `What the,' and that was it. I thought I was dead. That's why I didn't apply my breaks [sic].
(Tr. at 24.) Appellee and plaintiff's counsel then engaged in the following colloquy:
Q. But as you sit here today, there's no question you saw it, is there?
A. There's no question I what?
Q. There's no question you saw the object.
A. There's no question that I saw something. I never did know what the object was, quite frankly, and I didn't know the color of the object until the next day.
Q. And what you're saying to this court is that it appeared — the object appeared to be further away than it turned out to be.
A. Yes.
Q. And do you have an explanation as to why — as to why you didn't try to stop? You knew there was an object. Why didn't you just try to stop?
A. Wait a minute. I didn't stop because I didn't see it. If I had seen anything in the road that looked like it was going to be a hazard or a hindrance or even something that I couldn't identify but looked close enough to be concerned about, I would have put my brakes on. I had just paid for the car and had new tires on the car.
(Tr. at 25-26.)
 {¶ 8} During later cross-examination appellee testified, in part, as follows:
Q. * * * Okay. You say you didn't see anything until you hit it.
A. Right.
Q. Then your other statement, if I'm not misquoting you — if I am, please tell me — you saw something ahead of you.
A. Yes. How — you — there's a distance here that one of us is leaving out. I saw something that looked like it was a few blocks from me.
Q. Okay. So —
A. And in reality, it must have been — I can't even judge where it must have been.
Q. So your judgment as to how far away that — and this thing you saw appeared to be in the roadway?
A. I couldn't tell that. If I had thought it was in the roadway, I would have slowed down.
Q. So this thing you saw, what you're telling us is, you thought it was a lot further away. Your judgment was it was further away than it really was.
A. It was — it looked further away than it was. It did not look like it was anything that I would have to deal with for, like I say, probably ten seconds or something, so I would have been —
* * *
Q. Did you make a mistake as to how far away this thing you saw was?
A. If you mean did I misjudge it? Obviously.
(Tr. at 44-45.)
 {¶ 9} In his first assignment of error, appellant argues that the jury's determination that Wrona was 60% at fault and appellee was only 40% at fault is against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. The essential elements of a negligence claim are: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) such breach was the proximate cause of plaintiff's injuries. Chambers v. St.Mary's School (1998), 82 Ohio St.3d 563, 565; Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 285.
 {¶ 10} Appellant argues that, because the evidence demonstrated that appellee violated R.C. 4511.21(A), the "assured clear distance rule," he was negligent per se. Indeed, that statute provides, "no person shall drive any motor vehicle * * * at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." Moreover, the Supreme Court of Ohio has held that a violation of this statute, in the absence of a legal excuse, constitutes negligence as a matter of law. Woods v. Brown's Bakery (1960),171 Ohio St. 383, 386.
 {¶ 11} Appellant, however, seems to advance the proposition that if one violates this rule, one is not only negligent per se, but will also always be liable in damages. Appellant devotes nearly the full measure of his argument under his first assignment of error to a discussion of how the evidence proves that appellee violated the assured-clear-distance-ahead statute. Specifically, he focuses on evidence that Wrona's vehicle was reasonably discernible to appellee.
 {¶ 12} However, the applicable decisional law does not hold that a violator of the assured-clear-distance-ahead statute is always liable, but only that some degree of contributory negligence must be found to have been committed by such a violator. Former R.C. 2315.19, provides that plaintiffs whose own negligence was a greater cause (more than fifty percent) of their injuries than the negligence of the defendant or defendants, are barred from recovery. Knight v. Dept. of Rehab. Corr. (Mar. 30, 1999), Franklin App. No. 98AP-734.[1] Thus, even if a defendant violated the assured-clear-distance-ahead statute, and is therefore negligent per se, a trier of fact could still determine that the plaintiff's negligence was a greater cause of the plaintiff's injuries than the defendant's per se negligence. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,40 (holding that just because a defendant was negligent per se does not mean that his negligence was the sole proximate cause, or even a proximate cause of the accident that caused the plaintiff's injuries); and Traver v. Young (Jan. 14, 2000), Lucas App. No. L-98-1390 (holding that a finding of negligence per se due to a violation of the assured-clear-distance-ahead statute does not preclude a driver from raising any applicable defenses, including comparative negligence and proximate cause.) Put another way, a finding of negligence is not equivalent to a finding of liability. Hitchens v. Hahn (1985),17 Ohio St.3d 212, 214. See, also, Sabo v. Helsel (1983), 4 Ohio St.3d 70, and Merchants Mut. Ins. Co. v. Baker (1984), 15 Ohio St.3d 41,43.
 {¶ 13} In the present case, the jury did determine that appellee was negligent. The record does not reveal whether the jury did so because it determined he violated the assured-clear-distance-ahead statute, or simply because the jurors felt appellee operated his vehicle in a manner demonstrating a want of ordinary care. Nonetheless, the dispositive and thus more important finding the jury made was that Wrona's negligence was the greater cause of his injuries. Though appellant does not discuss in his brief how this finding is against the manifest weight of the evidence, we have reviewed the entire transcript of the trial, and find that it is not.
 {¶ 14} Wrona parked his vehicle in the only northbound lane of travel on a public roadway.[2] He did so well after nightfall, and his vehicle was itself a dark color. He did not illuminate his headlights or his hazard lights. His vehicle's parking lights were dim, if they were illuminated at all. There is no evidence that Wrona took steps to set up a flare or other warning that his vehicle was stopped in a lane of travel. Finally, Wrona remained seated in the vehicle. Viewing the evidence adduced, we cannot say that the jury's apportionment of 60% of the fault to Wrona was against the manifest weight of the evidence. Accordingly, we overrule appellant's first assignment of error.
 {¶ 15} In his second assignment of error, appellant argues the trial court erred in instructing the jury on the issue of unavoidable accident. Over appellant's objection, the trial court included the following instruction in its charge to the jury:
An accident is unavoidable if it is not caused by the negligence of either party and if it could not have been foreseeably — reasonably foreseen and avoided by the use of ordinary care.
(Tr. at 67.) Appellant argues that the evidence demonstrated appellee was negligent per se (through violation of the assured-clear-distance-ahead statute) and it was thus error to utilize an instruction that permitted the jury to conclude that neither party was negligent.[3]
 {¶ 16} An instruction should be given if it is a correct statement of law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the specific instruction. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591; Feterle v. Huettner (1971)28 Ohio St.2d 54, syllabus. "Thus, the proper standard for the trial court is whether there is probative evidence that, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the party seeking to have the instruction given." Power v. Kirkpatrick (July 20, 2000), Franklin App. No. 99AP-1026, *5-6. However, the court must neither consider the weight of the evidence nor the credibility of the witnesses. Id. at 5; Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284.
 {¶ 17} When reviewing a trial court's jury instruction, the proper standard of review for an appellate court is whether the trial court's decision to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case. State v. Wolons (1989),44 Ohio St.3d 64, 68. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} In the present case, the trial court did not abuse its discretion in giving the unavoidable accident instruction to the jury because reasonable minds could have concluded, on the evidence adduced, that appellee was not negligent. Contrary to appellant's argument that the jury could only have concluded that appellee violated the assured-clear-distance-ahead statute, a collision does not equal a violation of R.C. 4511.21 in every instance. Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 7. "Violation of the statute and a finding of negligence per se
depends on whether there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." Id., citing McFadden v. Elmer C. BreuerTrans. Co. (1952), 156 Ohio St. 430. (Emphasis sic.)
 {¶ 19} In the present case, though the evidence was not conflicting with respect to the first three prongs enumerated above, there was a genuine issue of fact with respect to whether Wrona's vehicle was "reasonably discernible" to appellee. This is demonstrated by the portions of the trial transcript reprinted herein, supra. A vehicle stopped on a highway in a driver's pathduring daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernible object as a matter of law. Smiddy, supra, at paragraph two of the syllabus. However, the question of reasonable discernibility is more difficult, and thus one for the trier of fact, when the vehicle is stopped at night. See, e.g., Junge v. Brothers (1985),16 Ohio St.3d 1 (decedent crashed into overturned tractor-trailer blocking decedent's lane between 3:00 a.m. and 4:00 a.m.);Sabo, supra (appellant crashed into tractor-trailer making left turn across appellant's lane at 10:30 p.m. in foggy weather); andTomlinson v. Cincinnati (1983), 4 Ohio St.3d 66 (decedent crashed into an abandoned, unlighted pick-up truck in his lane at 11:20 p.m.).
 {¶ 20} In the present case, since it was possible for the jury to determine that Wrona's car was not reasonably discernible, it could have thus determined that appellee had not violated R.C. 4511.21, and was not negligent per se. When the question of whether the defendant violated the assured-clear-distance-ahead statute is a matter of dispute, the unavoidable accident defense is appropriately included in a trial court's instructions to a jury. Peoples v. Braun (May 29, 1992), Lake App. No. 90-L-15-183. Additionally, the testimony of record demonstrates that the jury could reasonably have determined that appellee had not breached his common law duty of ordinary care. Thus, the trial court's instruction was appropriate under the facts and circumstances of this case.
 {¶ 21} Even were the instruction given in error, however, this would not have been prejudicial to appellant, since the jury clearly disregarded the instruction and instead found that both Wrona and appellee were negligent. See Dunn v. Higgins (1968),14 Ohio St.2d 239, 246. For all of the foregoing reasons, we find no abuse of discretion in the giving of the unavoidable accident instruction, and overrule appellant's second assignment of error.
 {¶ 22} Having overruled both of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BROWN, JJ. concur.
[1] Sub. S.B. 108, eff. April 9, 2003, repealed R.C. 2315.19. Because appellant's cause of action accrued prior to April 9, 2003, the former statute applies to this case.
[2] In addition to the fact that a reasonable trier of fact could find that this action demonstrated a lack of ordinary care, it may have also been unlawful. See R.C. 4511.66.
[3] As would be expected, appellant does not argue that the instruction was given in error because reasonable minds could not find that Wrona was not negligent. Therefore, we do not address this issue. We only address appellant's argument that the instruction was wrongly given because the court should have found appellee negligent per se.