**HOLLINGSWORTH, Appellee and Cross–Appellant,**

v.

**TIME WARNER CABLE, Appellant and Cross–Appellee.**
</div>

[Cite as *Hollingsworth v. Time Warner Cable,* 168 Ohio App.3d 658, 2006-Ohio-4903.]

<div style="text-align:center">

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–050549, C–050859, C–050873, C–050940 and C–050944.

Decided Sept. 22, 2006.
</div>

660

662

664

Cook, Portune, & Logothetis, David Cook, Stephen A. Simon, and Todd B. Portune, for appellee and cross-appellant.

Roetzel & Andress, L.P.A., Peter K. Newman, and Libby M. Shaffer, for appellant and cross-appellee.

PAINTER, Presiding Judge.

{¶ 1} In this wrongful-termination case, we affirm the jury verdict. We affirm all of the trial court's rulings on posttrial motions, with one exception—we reinstate the original award of attorney fees.

{¶ 2} Plaintiff-appellee and cross-appellant, Patti Hollingsworth, was fired by her former employer, defendant-appellant and cross-appellee, Time Warner Cable. Hollingsworth had worked for Time Warner since 1989 and was an audit coordinator when she was fired in 2002. In her last few months of employment, Hollingsworth had suffered from chronic sinusitis, entitling her to time off under the Family and Medical Leave Act ("FMLA"). During her FMLA absence, she had become pregnant, and a short time later, she was terminated—purportedly because of her poor job performance.

{¶ 3} Hollingsworth sued, asserting Title VII pregnancy discrimination and FMLA discrimination and retaliation. The trial court granted summary judgment for Time Warner, and the case was appealed for the first time in *Hollingsworth v. Time Warner Cable* ("*Hollingsworth I*").[1] In *Hollingsworth I*,

---

1. 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976.

we held that Hollingsworth had presented sufficient evidence of discriminatory conduct to overcome summary judgment on the issue of whether Time Warner's justification for termination was a pretext. Accordingly, we reversed and remanded.

{¶ 4} On remand, the case was tried to a jury. The jury found that Time Warner had engaged in discrimination and awarded Hollingsworth back pay, liquidated damages, compensatory damages, and punitive damages. Judgment was entered, and Time Warner moved for a new trial, remittitur, and judgment notwithstanding the verdict ("JNOV"). The trial court remitted both the back-pay award and liquidated-damages award in equal amounts and reduced the award for attorney fees.

{¶ 5} Time Warner assigns error to the trial court's decisions (1) refusing to grant a new trial on the issue of liability, (2) refusing to vacate or remit the jury's damage awards or to grant a new trial on damages, (3) granting in part Hollingsworth's attorney-fees petition, and (4) refusing to grant a new trial based on Hollingsworth's counsel's remarks during closing argument. Hollingsworth's cross-appeal challenges the trial court's decisions (1) partially granting Time Warner's motion for remittitur on her award of back pay and (2) denying in part her attorney-fees petition.

{¶ 6} We reverse that part of the trial court's judgment remitting Hollingsworth's attorney fees by $26,667, but we affirm the balance of the trial court's judgment.

## I. Hollingsworth's History at Time Warner

{¶ 7} Hollingsworth began working at Time Warner in 1989. She was promoted to audit coordinator in 1996—a position she held until her termination.

{¶ 8} In October 2000, Hollingsworth was diagnosed with chronic sinusitis, entitling her to intermittent FMLA leave from employment.

{¶ 9} In September 2001, Hollingsworth left work early because she was ill. For the next two days, her physician sent notes to Theresa Johnson, Hollingsworth's supervisor, regarding Hollingsworth's absences. In response, Johnson contacted Hollingsworth's physician to confirm the validity of her illness. On learning of Johnson's unauthorized contact, Hollingsworth complained to the United States Department of Labor ("DOL"). The DOL investigated and determined that with the exception of Johnson's direct contact with the physician's office regarding Hollingsworth's medical condition, Time Warner had "appeared to be in full compliance with the FMLA in regard to [Hollingsworth's] employment."

{¶ 10} About two months later, Hollingsworth told Time Warner that she had become pregnant. Later, Hollingsworth's obstetrician certified the pregnancy and requested that she reduce her workload.

{¶ 11} In January 2002, Johnson completed annual performance evaluations. Hollingsworth received an individual score of 4.8 out of a possible 5 points. Johnson also noted that Hollingsworth's work was thorough and that her attention to detail had yielded a quality job performance. The evaluation was signed by department manager Connie Emerson.

{¶ 12} Later that month, Hollingsworth's attorney wrote a letter to Leroy Peyton, Time Warner's vice president of human resources, concerning the way Hollingsworth had been treated after her FMLA-protected absences and her DOL complaint. The letter charged that (1) her supervisors had made various comments questioning her dependability, (2) she had not been considered for a new position, and (3) she was soon to be demoted to a clerical position because of her absences and DOL complaint. When Time Warner failed to respond, Hollingsworth's attorney sent three follow-up letters.

## II. The Theft

{¶ 13} In January 2002, a lobby supervisor reported a problem with Customer Service Representative ("CSR") Tisia Hill's handling of a customer account. As a CSR, Hill would enter bankruptcy adjustments to customer accounts into the computer. Hollingsworth was responsible for auditing these bankruptcy adjustments each day. To audit the bankruptcy adjustments, Hollingsworth would review a daily adjustment report and then compare the dollar-amount entries in both the subscriber-adjustment-inquiry ("SAI") and the subscriber-memo-statement ("SMS") screens for each account. Any difference between the dollar amount listed on the SAI screen and that listed on the SMS screen was to be reported to the CSR who handled the bankruptcy adjustment and to the CSR's lobby supervisor. The error would then be recorded in a monthly error log.

{¶ 14} When Emerson contacted Hill about the customer complaint, Hill stated that she had made a mistake while posting the customer's payment on the account. Hill later admitted that she had kept the customer's cash payment and that she had entered a bankruptcy statement on the customer's account in an attempt to conceal the theft. Hill was terminated, and a more thorough investigation followed, which revealed that Hill had stolen over $18,000. Hollingsworth was then investigated to discover whether she had failed to perform her audit-coordinator duties.

{¶ 15} The next month, Emerson signed an employee-performance notice indicating that Hollingsworth should be terminated for having improperly audited Hill's adjustments and for allowing an estimated $18,000 loss to Time Warner.

Emerson also noted that for months, Hollingsworth's audit reports had failed to include one township's accounts.

{¶ 16} In early March 2002, Hollingsworth was fired for "poor job performance." The employee-termination evaluation noted that Hollingsworth had failed to follow appropriate audit procedures and that the failure had led to Hill's theft. Curiously, on the termination evaluation, Johnson gave Hollingsworth low marks, whereas just two months earlier, Hollingsworth's annual evaluation—completed and signed by Johnson—had shown contrasting high marks throughout the range of evaluating factors.

{¶ 17} Time Warner had given Hollingsworth neither warning nor notice of disciplinary proceedings until the day she was fired. That day, she had come to work, was called to a meeting, and was fired on the spot.

### III. The Posttrial Motions and Jury Awards

{¶ 18} After a trial, the jury awarded Hollingsworth $80,000 in back pay, $80,000 in liquidated damages, $32,500 in compensatory damages, and $225,000 in punitive damages. Upon Time Warner's posttrial remittitur motion, the trial court reduced the back-pay award from $80,000 to $40,000, with a corresponding reduction in value for the liquidated-damages award. The trial court also partially granted Hollingsworth's motion for attorney fees, reducing the amount awarded from $199,312.70 to $172,645.70 and granting costs of $17,301.82. The trial court otherwise denied Time Warner's JNOV, remittitur, and new-trial motions.

{¶ 19} On appeal, Time Warner asks this court to overturn the trial court's decision granting only in part Time Warner's posttrial motion for remittitur, as well as its decision denying JNOV and a new trial on liability—and to do either or all the following: (1) set aside the jury's finding of liability or grant a new trial, (2) set aside or substantially remit the jury's awards of punitive, liquidated, back-pay, and compensatory damages, (3) substantially reduce the award of attorney fees and other costs, or (4) grant Time Warner a new trial based on Hollingsworth's attorney's closing argument. We discuss Time Warner's assignments of error in turn.

{¶ 20} We initially note that Time Warner failed to renew its directed-verdict motion at the close of all the evidence. A motion for a directed verdict that is denied at the close of the plaintiff's evidence must be renewed at the close of all evidence to preserve the error for appeal.[2] Consequently, by neglecting to

---

2. See *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464. See, also, *Chemical Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 556 N.E.2d 490.

renew its directed-verdict motion at the close of all the evidence, Time Warner has failed to preserve this issue on appeal.

### IV. Pregnancy Discrimination and Proof of Pretext

{¶ 21} In its first assignment of error, Time Warner charges the trial court with error in failing to grant its JNOV and new-trial motions on Hollingsworth's pregnancy-discrimination and FMLA discrimination and retaliation claims. Time Warner argues that Hollingsworth failed to satisfy her burden to show that Time Warner's reasons for termination were pretextual.

{¶ 22} Title VII of the Civil Rights Act of 1964 prohibits discrimination based on race, color, religion, sex, or national origin.[3] The Act was amended in 1978 to include the Pregnancy Discrimination Act ("PDA").[4] The PDA makes it an unlawful employment practice for an employer to discharge an employee because of "pregnancy, childbirth, or related medical conditions."[5]

{¶ 23} Ohio courts share concurrent subject-matter jurisdiction with federal courts over Title VII actions.[6] In deciding the merits of Hollingsworth's claim, we follow the decisions of the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit.[7] The clearly established framework for a Title VII analysis applies, in large part, to an analysis under the PDA.[8] To prevail on a claim of pregnancy discrimination, the initial burden to prove a prima facie case is on the employee.[9] If the employee successfully presents a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge.[10] If the employer is able to provide a nondiscriminatory reason for the termination, then the burden shifts back to the

---

**3.** See Section 2000e et seq., Title 42, U.S.Code.

**4.** See Section 2000e(k), Title 42, U.S.Code.

**5.** See Section 2000e–2(a)(1) and 2000e(k), Title 42, U.S.Code; see, also, *Internatl. Union, UAW v. Johnson Controls* (1991), 499 U.S. 187, 198–199, 111 S.Ct. 1196, 113 L.Ed.2d 158.

**6.** See *Manning v. Ohio State Library Bd.* (1991), 62 Ohio St.3d 24, 577 N.E.2d 650, paragraph one of the syllabus; see, also, *Yellow Freight Sys., Inc. v. Donnelly* (1990), 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834.

**7.** See *McConaughy v. Boswell Oil Co.* (1998), 126 Ohio App.3d 820, 826, 711 N.E.2d 719.

**8.** See id.

**9.** See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668; *McConaughy*, 126 Ohio App.3d at 826, 711 N.E.2d at 723; see, also, *Bullock v. Totes, Inc.* (Dec. 22, 2000), 1st Dist. No. C–000269, 2000 WL 1867400.

**10.** *McDonnell Douglas*, supra.

employee to show that the articulated reason is merely a pretext for discrimination.[11]

{¶ 24} Time Warner rebutted Hollingsworth's prima facie case—and shifted the burden back to her—by offering the following nondiscriminatory reasons for her termination: (1) her failure to properly audit Hill's bankruptcy adjustment and (2) her failure to ensure that the Green Township accounts were included in her daily adjustment reports. On appeal, Time Warner argues that its JNOV and new-trial motions regarding its PDA liability should have been granted because Hollingsworth had failed to present sufficient evidence to prove that its proffered reasons were pretextual.

{¶ 25} An appellate court reviews a trial court's denial of a JNOV motion de novo.[12] "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination [in disposing of the motion]."[13]

{¶ 26} The resolution of a new-trial motion ordinarily lies "in the sound discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of discretion."[14] An abuse of discretion is manifest when the court's attitude is unreasonable, arbitrary, or unconscionable.[15] When a trial court's decision on a motion for a new trial involves a question of fact, a reviewing court must view the evidence in a light favorable to the trial court's decision rather than to the jury's verdict.[16]

{¶ 27} As we initially noted in *Hollingsworth I*, an employee may prove that an employer's proffered reasons for termination are pretextual by

---

11. Id. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d 668.

12. See *Rondy, Inc. v. Goodyear Tire & Rubber Co.*, 9th Dist. No. 21608, 2004-Ohio-835, 2004 WL 344157.

13. See *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334.

14. See *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 103, 670 N.E.2d 268.

15. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

16. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 351, 28 OBR 410, 504 N.E.2d 19, citing *Jenkins v. Krieger* (1981), 67 Ohio St.2d 314, 320, 21 O.O.3d 198, 423 N.E.2d 856.

showing through a preponderance of the evidence that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the discharge, or (3) were insufficient to motivate the discharge.[17] It is not enough to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.[18] In *St. Mary's Honor Ctr. v. Hicks*, the United States Supreme Court held that the trier of fact may infer discrimination from the falsehood of the employer's explanation.[19]

{¶ 28} Following a trial on the merits, our inquiry into Time Warner's liability extends only to whether Hollingsworth produced sufficient evidence to support the jury's finding of intentional discrimination.[20]

### V. Pretext I—Failure to Audit Tisia Hill's Bankruptcy Adjustments

{¶ 29} Time Warner asserts that the investigation into Hollingsworth's audit-coordinator duties provided one of the nondiscriminatory grounds for her discharge.

{¶ 30} Time Warner presented testimony tending to show that the investigation had revealed that Hollingsworth had missed ten possible errors committed by Hill and that Hill's lobby supervisor, Sandy Marshall, had never received any correspondence from Hollingsworth about the errors on the ten accounts. These findings were reported to Time Warner's vice president of human resources, Leroy Peyton. Peyton further scrutinized the findings and concluded that Hollingsworth had failed to identify errors in seven accounts, rather than in ten.

{¶ 31} At trial, Hollingsworth rebutted this evidence by adducing testimony showing that Time Warner had admitted that Hollingsworth's error logs would have reflected whether she had caught the errors in Hill's bankruptcy statements—but that management never reviewed these error logs before her termination. Hollingsworth's supervisor, Theresa Johnson, testified that the error logs would have been "real important to check" and would have conclusively shown whether the errors had been reported. At the time of the termination investigation, Time Warner's representatives had reviewed neither the error logs nor the e-mails that Hollingsworth had purportedly sent.

---

17. *Hollingsworth v. Time Warner Cable*, 157 Ohio App.3d 539, 2004-Ohio-3130, 812 N.E.2d 976, at ¶ 23, quoting *Manzer v. Diamond Shamrock Chem. Co.* (C.A.6, 1994), 29 F.3d 1078, 1084.

18. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407; see, also, *Noble v. Brinker Internatl. Inc.* (C.A.6, 2004), 391 F.3d 715, 721.

19. See *Hicks*, supra.

20. See *United States Postal Serv. Bd. of Governors v. Aikens* (1983), 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403. See, also, *Noble*, supra.

{¶ 32} Hollingsworth also presented testimony that after her termination, Time Warner had destroyed the error logs and erased the e-mails without ever reviewing them. Emerson testified that at the time of termination, the error logs were in Hollingsworth's desk and that none of the error logs had been requested or reviewed by the managers who had signed off on Hollingsworth's discharge.

{¶ 33} Time Warner later countered that the error logs and e-mails had been destroyed in accordance with its document-retention policy. But the testimony at trial revealed that Time Warner's document-retention policy contained no reference to error logs. During closing argument, Time Warner was unable to explain exactly what had happened to the error logs in Hollingsworth's desk: "What happened to the error logs? I can't even tell you."

{¶ 34} There was also conflicting trial testimony regarding whether Hollingsworth had informed Marshall of Hill's errors. Marshall testified that she had never received any e-mail messages from Hollingsworth about the seven errors and that Hollingsworth had failed to forward the monthly error logs. Hollingsworth testified that "she did not recall" sending any e-mail to Marshall regarding the seven *specific* accounts cited by Time Warner as justification for her termination. But Hollingsworth's answers were in response to particular and specific inquiries regarding whether she recalled the identity of the account holders and the specific account numbers for each of the seven accounts. Hollingsworth later testified that she had recalled personally meeting with Marshall regarding Hill's mistakes on more than one occasion. Notably, the e-mails that Hollingsworth allegedly sent to Marshall about the Hill accounts had also been erased.

{¶ 35} Testimony at trial further showed that Hill had deleted bankruptcy notations. In many instances, Hollingsworth had audited one of Hill's accounts, found an error, and noted the error with a bankruptcy memorandum. Hill would then go back and delete the notation. The deletions would have allowed Hill to circumvent the audit coordinator, consequently exonerating Hollingsworth from accountability for Hill's thievery. In fact, out of the 25 preliminary accounts investigated by Emerson as having potential errors, 15 of the accounts had notations that had been subsequently deleted by Hill. Thus, Hollingsworth was unaccountable for 15 of the 25 accounts initially investigated—leaving only the ten accounts that had been submitted to Peyton. As we have already noted, Peyton's investigation further culled that number to seven accounts (of the initial 25) for which Hollingsworth might have been responsible.

{¶ 36} Hollingsworth also argued that similarly situated employees were not discharged or disciplined in connection with Hill's theft. Time Warner neither investigated nor disciplined either Johnson or Emerson in connection with Hill's theft. Moreover, during Hollingsworth's FMLA-protected absences, backups

Roxanne Roberts and Annette Hampton had performed audits of the lobby representatives' bankruptcy accounts. And despite the fact that Roberts and Hampton had also audited Hill's bankruptcy accounts and made similar mistakes, neither had been questioned or reprimanded.

{¶ 37} Hollingsworth testified at trial that over the course of the year, Roberts had frequently backed her up and that Roberts's primary responsibility had been to back up Hollingsworth. Yet Roberts had missed and failed to report at least one "whopper of an error" in auditing Hill's account. Time Warner, through the trial testimony of Emerson and Johnson, characterized the "whopper of an error" as "no error at all," and therefore Roberts would not have been expected to report it. But Hollingsworth produced Johnson's pretrial deposition in which she admitted that the account reflected an error. Roberts was never reprimanded or investigated.

## VI. Pretext II—The Green Township Accounts

{¶ 38} Time Warner's second proffered nondiscriminatory reason for firing Hollingsworth was that she had failed to ensure that the Green Township accounts were included in her daily adjustment reports.

{¶ 39} Specifically, Time Warner argues that during direct examination, Hollingsworth took sole responsibility for the Green Township account problem. In support, Time Warner asserts that on cross-examination, Hollingsworth admitted that she had called the MIS department to fix the problem in October 2001, that it had been fixed, that the problem later recurred, but that she did not follow up on it.

{¶ 40} In response, Hollingsworth claims that Time Warner has misconstrued her trial testimony and that the imputation of responsibility arose from a February 2002 e-mail. In that e-mail, Hollingsworth commented that it was her "fault" for failing to *follow up* after discovering and reporting the missing Green Township accounts. But Time Warner's vice president of finance admitted that several MIS employees were also responsible for their failure to correct the problem with the missing accounts. This admission strongly corroborated Hollingsworth's testimony that she could not have fixed the problem alone—she needed the expertise of the MIS department. Also, given the admitted fault of the MIS department in failing to correct the problem, Time Warner neither investigated nor disciplined any MIS employee in connection with the Green Township accounts. Hollingsworth alone was the focus of Time Warner's investigation.

{¶ 41} One of Hollingsworth's trained backups testified that she and other backups had noticed the missing Green Township accounts, but that they had failed to even report the missing information. Even more questionable was the

fact that Time Warner's representatives, when making the decision to terminate Hollingsworth, had completely failed to ascertain information about Hollingsworth's attempt to fix the Green Township problem. The trial transcript shows that when Hollingsworth was discharged, the terminating supervisors' investigation had failed to discover that Hollingsworth had called MIS personnel multiple times in her attempt to remedy the Green Township problem.

{¶ 42} Time Warner also argues that rather than allowing the accounts to continue unaudited, Hollingsworth could have printed out the missing information in hard copy or found the missing information online. But trial testimony revealed that these accounts could be audited retrospectively and that often these accounts would go unaudited for two to three months at a time. Hollingsworth could have easily audited the Green Township accounts after the fact.

{¶ 43} In summation, the trial testimony showed that Hollingsworth was the only employee who had attempted to fix the Green Township problem, that she could not remedy the problem alone, that her replacements also noticed the problem but failed to even report it, and that the accounts could be audited two to three months after the fact.

{¶ 44} Consequently, we find that the record is replete with testimonial evidence whereby a jury could have concluded that Time Warner's proffered reasons for the termination were pretextual and that Time Warner had intentionally discriminated against Hollingsworth. That conclusion was further buttressed by the plethora of trial testimony that had shown that Time Warner's investigation into Hollingsworth's alleged shortcomings—while ignoring her co-workers' culpability in these matters—was perfunctory.

{¶ 45} By destroying the error logs and deleting Hollingsworth's e-mails, Time Warner had forced the jury to weigh the testimony of multiple witnesses in deciding whether it had intentionally discriminated against Hollingsworth. If the error logs and e-mail had been preserved, there would have been little room for speculation. But as it stood, the jury believed Hollingsworth in finding that Time Warner had intentionally discriminated against her because she was pregnant. For these reasons, in combination with those enumerated in *Hollingsworth I*, we hold that the jury verdict against Time Warner was supported by the evidence and that the trial court correctly denied Time Warner's JNOV motion. We also hold that the trial court did not abuse its discretion in denying Time Warner's motion for a new trial.

### VII. FMLA Liability

{¶ 46} The evidence showing that Time Warner's reasons were pretextual also supported the trial court's decision denying Time Warner's new-trial and JNOV motions on Hollingsworth's FMLA discrimination and retaliation claims. We

hold that the trial court did not abuse its discretion by denying Time Warner's new-trial motion on its liability for FMLA discrimination and retaliation and that there was sufficient evidence in the record for the jury to find that Time Warner's reasons had no basis in fact, did not motivate the discharge, or were insufficient to warrant Hollingsworth's discharge.[21]

{¶ 47} For all of the foregoing reasons, we also uphold the trial court's judgment denying Time Warner's JNOV and new-trial motions as they related to its liability for FMLA discrimination and retaliation.

## VIII. Damages

{¶ 48} Time Warner's second assignment of error charges that the trial court erred in failing to vacate or remit the jury's damage awards or to grant a new trial on damages. Specifically, Time Warner asserts that the trial court should have granted Time Warner's JNOV, remittitur, or new-trial motions as to (1) punitive and liquidated damages, because Time Warner established its good-faith defense under Title VII and the FMLA, (2) back-pay damages, because Hollingsworth had failed to mitigate her damages, and (3) compensatory damages, because Hollingsworth did not establish causation and failed to present sufficient evidence to support an emotional-distress claim. We address these subassignments of error in order, first noting that the standard for reviewing a trial court's jury instruction on damages is whether the trial court's decision to give a requested instruction constituted an abuse of discretion under the facts and circumstances of the case.[22] We also review a trial court's decision denying a remittitur or new-trial motion under an abuse-of-discretion standard.[23] The assessment of damages is a function that falls squarely within the jury's purview,[24] and on appeal we will not substitute our judgment for that of the jury.[25] A trial court's decision denying a remittitur motion is not erroneous unless the award is so excessive as to appear to be the result of passion or prejudice by the jury, or unless the amount awarded is excessive and against the manifest weight of the evidence.[26] "To reverse a jury's damage award, it must appear to be 'so

**21.** See *Manzer,* 29 F.3d 1078; see, also, *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

**22.** See *Dawson v. McNeal,* 10th Dist. No. 03AP–396, 2004-Ohio-107, 2004 WL 51786, at ¶ 17.

**23.** See *Sarka v. Love,* 8th Dist. No. 85960, 2005-Ohio-6362, 2005 WL 3215138, at ¶ 27.

**24.** See *Carter v. Simpson* (1984), 16 Ohio App.3d 420, 423, 16 OBR 490, 476 N.E.2d 705.

**25.** See *Litchfield v. Morris* (1985), 25 Ohio App.3d 42, 44, 25 OBR 115, 495 N.E.2d 462.

**26.** Id.

disproportionate as to shock reasonable sensibilities.' " [27]

{¶ 49} But we review a denial of a JNOV motion de novo.[28]

## IX. Punitive Damages under Title VII

{¶ 50} Time Warner claims that the trial court erred in denying its JNOV, remittitur, and new-trial motions as to punitive damages. It also alleges that the trial court abused its discretion by instructing the jury on punitive damages, because (1) Hollingsworth failed to establish that Time Warner had acted with "malice" and "reckless indifference" and (2) Time Warner had established its good-faith defense under Title VII.

{¶ 51} To recover punitive damages under Title VII, a plaintiff must prove by a preponderance of the evidence that the employer's intentional discrimination was the result of "malice" or "reckless indifference" to the federally protected rights of the aggrieved individual.[29] The Sixth Circuit has held that one way in which a plaintiff may show that the employer acted with reckless disregard for the plaintiff's federally protected rights is by showing either (1) that the decisionmakers in management were familiar with the antidiscrimination laws and the employer's practices for implementing those laws or (2) that the defendant's employees lied, either to the plaintiff or to the jury, to cover up their discriminatory actions.[30] While only one element is necessary, we believe that a reasonable jury could have found both in this case.

{¶ 52} The decisionmaking managers at Time Warner were familiar with the antidiscrimination laws and the employer's practices for implementing those laws. Leroy Peyton, Time Warner's vice president of human resources, had over 35 years' experience in human resources, which included a period of employment with the Ohio Civil Rights Commission. In anticipation of Hollingsworth's termination, Peyton had sought advice from Time Warner counsel Greg Drake regarding Hollingsworth's federally protected rights. The trial testimony also revealed that in January 2002, Peyton had received a letter from Hollingsworth's attorney warning that her absences were protected under the FMLA. In our

---

27. See *Sarka*, 2005-Ohio-6362, ¶ 27, quoting *Jeanne v. Hawkes Hosp. of Mt. Carmel* (1991), 74 Ohio App.3d 246, 258, 598 N.E.2d 1174.

28. See *McCrae v. Wal–Mart Stores, Inc.*, 7th Dist. No. 04MA275, 2005-Ohio-4472, 2005 WL 2065116, at ¶ 33.

29. Section 1981a(b)(1), Title 42, U.S.Code. See *Kolstad v. Am. Dental Assn.* (1999), 527 U.S. 526, 529, 119 S.Ct. 2118, 144 L.Ed.2d 494; see, also, *White v. Burlington N. & Santa Fe Ry.* (C.A.6, 2004), 364 F.3d 789, 805.

30. See *Hall v. Consol. Freightways Corp. of Delaware* (C.A.6, 2003), 337 F.3d 669, 675.

judgment, at the time of Hollingsworth's termination, Peyton had been sufficiently advised of the applicable law and had been familiar with Time Warner's practices for implementing those laws. Peyton's "anticipatory-termination" letter showed that he had at least perceived the risk that Hollingsworth's termination might violate federal law.

{¶ 53} This conclusion is buttressed by Time Warner's perfunctory investigation of Hollingsworth's allegedly poor job performance, the destruction of error logs, the trial testimony in Hollingsworth's favor, and other similar evidence of pretext from which the jury concluded that Time Warner had known that its termination decision might have been in violation of federal law. That knowledge satisfied the requirement that Time Warner had acted with reckless disregard of, and callous indifference to, Hollingsworth's federally protected status.

{¶ 54} Time Warner next asserts that its good-faith attempts to comply with Title VII insulated it from liability for punitive damages. Not so.

{¶ 55} The United States Supreme Court held in *Kolstad v. Am. Dental Assn.* that employers are not vicariously liable for the "discriminatory employment decisions of managerial agents" when those decisions conflict with the employer's " 'good-faith efforts to comply with Title VII.' " [31]

{¶ 56} Time Warner argues that it had attempted to comply in good faith with Title VII by publishing an employee handbook setting forth the EEO policies and by holding employee meetings to discuss its EEO policies.

{¶ 57} The Fourth Circuit has held that an employer's written policy does not shield an employer from liability when there is sufficient evidence that "call[s] into question" the sincerity of the employer's commitment to abide by that policy.[32] Similarly, the Sixth Circuit has suggested in dicta that the mere existence of an antidiscrimination policy does not shield an employer from liability.[33] Although the *Tisdale* analysis focused on a hostile-work-environment claim under Title VII, we are convinced that the *Tisdale* rationale properly extends by analogy to a Title VII pregnancy-discrimination claim.

{¶ 58} The trial evidence and testimony belying Time Warner's good-faith efforts to comply with Title VII included (1) the cursory investigation and

---

31.  See *Kolstad v. Am. Dental Assn.*, 527 U.S. at 545, 119 S.Ct. 2118, 144 L.Ed.2d 494, quoting *Kolstad v. Am. Dental Assn.* (1998), 139 F.3d 958, 974.

32.  See *Lowery v. Circuit City Stores, Inc.* (C.A.4, 2000), 206 F.3d 431, 442, 446, quoted in *Tisdale v. Fed. Express Corp.* (C.A.6, 2005), 415 F.3d 516, 532–533.

33.  See *Tisdale*, 415 F.3d at 532, citing *EEOC v. Harbert–Yeargin, Inc.* (C.A.6, 2001), 266 F.3d 498, 514. See, also, *EEOC v. Wal–Mart Stores, Inc.* (C.A.10, 1999), 187 F.3d 1241.

inadequate documentation of Hollingsworth's blameworthiness in failing to audit Hill's bankruptcy statements—most glaringly, its failure to review and later destruction of the error logs and e-mails, (2) Time Warner's failure to discipline Theresa Johnson for calling Hollingsworth's doctor, in violation of her FMLA rights, (3) Time Warner's failure to discipline other similarly situated employees for making the same and similar mistakes that Hollingsworth had made, and (4) the sharp contrast between the low marks on Hollingsworth's termination evaluation and the high marks on her annual evaluation conducted just two months before her termination.

{¶ 59} Time Warner also asserts that Hollingsworth had never complained about the pregnancy discrimination to anyone at Time Warner. We disagree. Hollingsworth notified the DOL when Johnson had wrongfully called Hollingsworth's doctor, and before her termination, Hollingsworth's attorney had mailed Time Warner multiple letters about its retaliatory and discriminatory treatment. Hollingsworth did not fail to complain.

{¶ 60} We conclude that the trial court did not abuse its discretion by submitting the issue of punitive damages to the jury. There was sufficient evidence to conclude that Time Warner had acted with "malice" or "reckless indifference" to the federally protected rights of Hollingsworth. We also conclude that Time Warner's good-faith defense was of no avail. The record contained sufficient evidence to support the conclusion that Time Warner either failed to abide by or had ignored its own antidiscriminatory policies. We affirm the trial court's decision denying Time Warner's JNOV motion as to Title VII punitive damages.

{¶ 61} Time Warner's final argument charges the trial court with error in denying its motion for a new trial or remittitur on the issue of punitive damages. Time Warner argues that the punitive-damage award was excessive and was against the manifest weight of the evidence. For many of the same reasons that the trial court did not abuse its discretion in giving the jury instruction on punitive damages, it did not abuse its discretion in denying Time Warner's motion for a new trial or remittitur. There is no indication in the record that the jury award was either excessive, the result of passion or prejudice, or against the manifest weight of the evidence.

{¶ 62} Thus we uphold the trial court's decision denying Time Warner's JNOV, remittitur, and new-trial motions as to punitive damages.

### X.  FMLA Liquidated Damages

{¶ 63} Time Warner also challenges the trial court's decision denying its JNOV, remittitur, and new-trial motions on the issue of liquidated damages.

Time Warner argues that its motions should have been granted because it had established its good-faith defense under the FMLA.

■■■ {¶ 64} " 'Liquidated damages' in an amount equal to the plaintiff's lost wages and benefits (plus interest) are awarded in FMLA cases unless the defendant proves that it acted in good faith and with reasonable grounds for believing that its actions did not violate the Act." [34] In this case, the jury did not believe that Time Warner had acted in good faith and with reasonable grounds for believing it was not in violation of the statute.

■■■ {¶ 65} We conclude that a reasonable jury could have rejected Time Warner's proffered reasons for firing Hollingsworth. There was sufficient evidence presented from which the jury could have found that Time Warner had terminated Hollingsworth for taking intermittent leave under the FMLA and that Time Warner had failed to prove that it had acted in good faith and with reasonable grounds for believing that it was not in violation of the FMLA. Again, this conclusion was supported by evidence showing that Time Warner had failed to review the error logs and other relevant material before terminating Hollingsworth; that Time Warner had destroyed the error logs; that Time Warner had neither disciplined—nor provided additional FMLA training for—Johnson after she contacted Hollingsworth's physician in direct violation of her FMLA rights; and that after Hollingsworth had taken her FMLA absences, she had been subjected to alienation, ridicule, and additional scrutiny from both her co-workers and her supervisors.

{¶ 66} Although the parties vehemently disputed the facts, the jury was entitled to conclude that Time Warner's reasons for termination were pretextual, that her FMLA-protected absences had been a deciding factor in her termination, and that Time Warner had failed to establish its good-faith FMLA defense. We also find nothing to support the conclusion that the trial court abused its discretion in denying Time Warner's remittitur and new-trial motions. Accordingly, we uphold the trial court's decision denying Time Warner's JNOV, remittitur, and new-trial motions as to liquidated damages.

### XI.  *Mitigation of Damages and Back Pay*

{¶ 67} Time Warner also challenges the trial court's decision denying its JNOV, remittitur, and new-trial motions on the issue of whether Hollingsworth had mitigated her damages, entitling her to back pay. The jury awarded Hollingsworth $80,000, which, on Time Warner's posttrial remittitur motion, the

---

34.  *Wilkerson v. Autozone, Inc.* (C.A.6, 2005), 152 Fed.Appx. 444; see, also, *Chandler v. Specialty Tires of Am. (Tenn.), Inc.* (C.A.6, 2002), 283 F.3d 818, 827. See Section 2617(a)(1)(A)(iii), Title 29, U.S.Code.

trial court reduced to $40,000. Time Warner now seeks a further reduction of the back-pay award. Conversely, Hollingsworth's cross-appeal urges this court to overturn the reduction and reinstate the original award of $80,000. We consider Time Warner's assignment of error and Hollingsworth's cross-appeal together.

{¶ 68} In reducing the back-pay award from $80,000 to $40,000, the trial court found that from October 2003 until the time of judgment, Hollingsworth had failed to mitigate her damages by failing to use reasonable care and diligence in seeking substantially equivalent employment. Specifically, the trial court found that after October 2003, Hollingsworth had abandoned her job hunt and that her sole source of income was from her part-time housecleaning business. The trial court reasoned that Hollingsworth's housecleaning endeavors did not satisfy her mitigation duty because she had entered a business in which she had no prior training or experience, she had made no serious investment in her business, and she had treated it as a parttime job.

{¶ 69} Time Warner argues that the trial court should have further remitted or vacated Hollingsworth's back-pay award because she had also failed to mitigate from March 2002 to October 2003. To establish that Hollingsworth had failed to mitigate her damages, Time Warner needed to show that (1) substantially equivalent positions were available and that (2) she had failed to use reasonable care and diligence in seeking those positions.[35]

{¶ 70} At trial, Hollingsworth testified that after she was terminated, during her pregnancy and after giving birth, she had looked at the employment ads in the classified section of the Sunday newspaper, put together a resume, made phone calls in response to the employment ads, and sent out her resume to multiple employers.

{¶ 71} By November 2002, Hollingsworth had found a temporary placement at a staffing agency, which paid $9 an hour. Her job at Time Warner had paid almost $15 an hour. Unfortunately, Hollingsworth's hours at the staffing agency declined, and in response, she started a housecleaning business. She continued to work at the staffing agency until about March 2003, when she continued to clean houses and to look for other employment. The job search continued until about October 2003, when Hollingsworth's housecleaning business became more profitable. Then, Hollingsworth stopped looking for full-time employment and concentrated on her housecleaning business. We hold that a reasonable jury could have found that Hollingsworth had exercised reasonable

---

**35.** See *Rasimas v. Michigan Dept. of Mental Health* (C.A.6, 1983), 714 F.2d 614.

diligence in mitigating her damages from the date of her termination through October 2003.

{¶ 72} We also hold that the trial court did not abuse its discretion by partially reducing Hollingsworth's back-pay award to $40,000 when it granted in part Time Warner's remittitur motion. Citing *Taylor v. Invacare Corp.*, Hollingsworth urges this court to find that "[s]elf-employment, if it is undertaken in good faith and is a reasonable alternative to seeking other comparable employment, may be considered permissible mitigation."[36] We agree that in the proper instance, self-employment can be mitigation. But we note that in this case, the trial court did not base its decision to remit solely upon Hollingsworth's self-employed status. The trial court additionally found that Hollingsworth had no experience in the housecleaning business, had made no serious investment in the business, and had treated it as a part-time, rather than a full-time, job.

{¶ 73} In light of the foregoing, we conclude that Time Warner's assignment of error seeking a further remittitur and Hollingsworth's cross-appeal challenging any remittitur are overruled. Accordingly, we uphold the trial court's decision remitting in part Hollingsworth's back-pay award to $40,000.

## *XII. Compensatory Damages*

{¶ 74} The jury awarded Hollingsworth $32,500 in compensatory damages for emotional distress suffered because of her unlawful termination. Time Warner argues that Hollingsworth was not entitled to compensatory damages because (1) she did not present sufficient evidence that she had suffered any significant emotional injury and (2) Time Warner was not the cause of her distress.

{¶ 75} The award of compensatory damages depended on Hollingsworth's ability to prove that Time Warner's unlawful actions had caused her emotional distress.[37] A plaintiff's own testimony, in combination with the facts and circumstances of a particular case, can suffice to sustain the plaintiff's burden on this issue.[38]

{¶ 76} The trial testimony showed that Hollingsworth was a young expectant mother who, with her husband, had been anticipating closing on a new home. She had been dependent on her job at Time Warner to pay for the new home, and she was concerned about the closing. Hollingsworth's testimony also re-

---

36. (C.A.6, 2003), 64 Fed.Appx. 516.

37. *Turic v. Holland Hospitality* (C.A.6, 1996), 85 F.3d 1211, 1215–1216, citing *Carey v. Piphus* (1978), 435 U.S. 247, 263–64, 98 S.Ct. 1042, 55 L.Ed.2d 252.

38. Id., citing *Meyers v. Cincinnati* (C.A.6, 1994), 14 F.3d 1115, 1119.

vealed that on her termination day, she was devastated, hysterically crying, and an emotional wreck. In the month following her firing, she had become unmotivated and withdrawn from her husband and daughters, and she had visited her obstetrician to discuss her depression.

{¶ 77} Two months before Hollingsworth's discharge, she had visited a psychiatrist allegedly because of the humiliation she had been suffering at the hands of her co-workers and managers as a result of her federally protected absences.

{¶ 78} At trial, Time Warner argued that Hollingsworth's emotional distress was caused by other factors in her life, such as problems with her soon-to-be stepdaughter. But the jury was free to reject, and did reject, Time Warner's causation argument.

{¶ 79} In our view, Hollingsworth was in a particularly vulnerable (pregnant) state when Time Warner engaged in its unlawful discrimination. Vulnerability is relevant when determining damages.[39] At the time of Hollingsworth's termination, Time Warner knew about her pregnancy. And we believe that given Hollingsworth's vulnerable emotional state, she suffered emotional distress that was caused by Time Warner's discrimination. We further conclude that there was sufficient evidence in the record to support a jury award for compensatory damages based upon her emotional distress. We uphold the jury award of $32,500 in compensatory damages.

### XIII. Attorney Fees

{¶ 80} Time Warner next assigns error to the trial court's decision granting in part Hollingsworth's motion for attorney fees and other costs. Time Warner argues that the trial court should have further reduced the attorney fees and costs because Hollingsworth's counsel's hourly rates were excessive, the hours expended were excessive, Hollingsworth was only partially successful, and the billed expenses were not properly taxable as costs.

{¶ 81} Hollingsworth's cross-appeal charges the trial court with error in reducing her attorney fees by $26,667. The trial court explained that this reduction reflected one-third of $80,000, which was the amount the trial court had reduced the jury's back-pay award and corresponding liquidated-damages award.

{¶ 82} We review a trial court's decision to award attorney fees under an abuse-of-discretion standard.[40] A trial court may consider the results obtained

---

**39.** Id., citing *Pratt v. Brown Machine Co.* (C.A.6, 1988), 855 F.2d 1225, 1240; see, also, EEOC Policy Guide at 10–11, reprinted in 8 Fair Employment Practices Manual (BNA) at 405:7096–97.

**40.** See *Blakeley–Leta v. Leta*, 11th Dist. No. 2004–L–14, 2005-Ohio-5391, 2005 WL 2548330, at ¶ 12, citing *Kalia v. Kalia*, 151 Ohio App.3d 145, 2002-Ohio-7160, 783 N.E.2d 623, at ¶ 50.

when adjusting attorney fees upward or downward.[41] The Sixth Circuit has held that "a court should not reduce attorney fees based on a simple ratio of successful claims." [42] Rather the court should "focus on the significance of the overall relief obtained by the plaintiff." [43]

{¶ 83} The trial court's opinion and entry noted that "the parties have litigated for 2½ years, which included summary judgment issued by the [c]ommon [p]leas [c]ourt and subsequently reversed by" this court in *Hollingsworth I*. New and extensive discovery was initiated, and several motions were heard and resolved by the trial court. The case was tried by a jury, and Hollingsworth was awarded a substantial judgment.

{¶ 84} We acknowledge the complexity of the case and the special expertise required to bring such a lawsuit. Hollingsworth submitted evidence supporting the hours worked and the rates claimed. Hollingsworth's counsel had also maintained detailed billing records that had sufficiently justified the hours expended. We conclude that Time Warner's assignment of error relating to attorney fees is meritless.

{¶ 85} We also note that Hollingsworth achieved a substantial success at trial. Hollingsworth prevailed to varying extents on each of her claims, and the unsuccessful aspects of her claims were "inextricably intertwined" with her successful claims such that they "involve a common core of facts or [were] based on related legal theories." [44] We fail to see a correlation between the trial court's reduction of damages (liquidated and back pay) and the court's reduction of attorney fees. In that regard, the trial court's rationale was unreasonable.

{¶ 86} Accordingly, Time Warner's assignment of error is overruled, but Hollingsworth's cross-appeal is well taken in this one respect—the trial court erred by reducing the fee award.

### XIV.  Passion and Prejudice

{¶ 87} Time Warner's final assignment of error alleges that the trial court should have granted its motion for a new trial because of Hollingsworth's attorney's closing argument. Time Warner argues that counsel's closing argu-

---

**41.** See *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 145, 569 N.E.2d 464, citing *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40.

**42.** See *Thurman v. Yellow Freight Sys.* (C.A.6, 1996), 90 F.3d 1160, 1169.

**43.** See *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933, 76 L.Ed.2d 40.

**44.** See id.

ment should not have (1) accused Time Warner of "destroying" the error logs, (2) referred to the alleged destruction of the documents as someone having "an appointment with the shredder," and (3) compared Time Warner management with a fictional movie character named Dean Wormer (who had fabricated a pretextual plan to remove a fraternity house from campus in *Animal House*).

{¶ 88} A party that loses a jury trial is entitled to a new trial if opposing counsel has "transcended the bounds of acceptable closing argument, creating an atmosphere 'surcharged with passion or prejudice.' " [45]

{¶ 89} Time Warner's first two arguments are without merit. The jury was free to reject Time Warner's assertion that it had destroyed the error logs under its document-retention policy, and the inference that Time Warner had destroyed the logs was supported by the evidence. With regard to Time Warner's third argument, our review of the record has failed to divulge inflammatory or disparaging commentary attributable to Hollingsworth's counsel that would have been likely to inflame the jury with passion and prejudice. And even this court has used references to *Animal House*.[46] Accordingly, Time Warner's final assignment of error is overruled.

{¶ 90} The judgment of the trial court is affirmed in all respects but one. We reinstate the original award of attorney fees of $199,312.70.

Judgment affirmed as modified.

SUNDERMANN and HENDON, JJ., concur.

---

**45.** See *Pesek v. Univ. Neurologists Assn., Inc.* (2000), 87 Ohio St.3d 495, 501–502, 721 N.E.2d 1011, quoting *Jones v. Macedonia–Northfield Banking Co.* (1937), 132 Ohio St. 341, 351, 8 O.O. 108, 7 N.E.2d 544.

**46.** See *State ex rel. Flynt v. Dinkelacker*, 156 Ohio App.3d 595, 2004-Ohio-1695, 807 N.E.2d 967, at ¶ 12.