# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

CHRISTINE L. OLIVER FKA CHRISTINE L. LUCARELL,

Plaintiff-Appellant/Cross-Appellee,

v.

CARYN GROEDEL, ESQ., ET AL.,

Defendants-Appellees/Cross-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0005**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2019 CV 02138

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Judges and Frederick D. Nelson,
Judge of the Tenth District Court of Appeals, Sitting by Assignment (Retired).

**JUDGMENT:**
Affirmed and Remanded.

*Atty. Randy J. Hart,* 3601 South Green Road, Suite 200, Beachwood, Ohio 44122, for
Plaintiff-Appellant/Cross-Appellee and
*Atty. Caryn M. Groedel* and Atty. Matthew S. Grimsky, Caryn Groedel & Associates
Co., LPA, 208 Spriggel Drive*,* Munroe Falls, Ohio 44262 for Defendants-
Appellees/Cross-Appellants and
*Atty. A. Scott Fromson,* 25550 Chagrin Boulevard, Suite 400, Beachwood, Ohio
44122, for Defendants-Appellees/Cross-Appellants*.*
Dated:
January 26, 2023

**Donofrio, J.**

{¶1} Plaintiff-Appellant/Cross-Appellee Christine L. Oliver, formerly known as Christine L. Lucarell (appellant), appeals the decision of the Mahoning County Court of Common Pleas awarding attorney fees in the amount of $195,030.60 to Defendants-Appellees/Cross-Appellants Caryn Groedel, Esquire, and Caryn Groedel and Associates Co., LPA (Groedel). Groedel filed a cross-appeal. A. Scott Fromson, Esquire and A. Scott Fromson, Attorney at Law, Inc. (Fromson) cross-appealed as well.

{¶2} On October 22, 2019, appellant filed a complaint for declaratory judgment in the Mahoning County Court of Common Pleas against Fromson and Groedel. She averred that in 2009, she contacted Fromson for legal representation concerning her employment with Nationwide Insurance. Appellant stated that Fromson subsequently contacted Groedel for co-counsel representation and appellant agreed to such representation in January 2010.

{¶3} Appellant further averred that Fromson undertook significant efforts to research the facts and legal basis for her complaint against Nationwide, which included an invasion of privacy claim. Fromson filed appellant's complaint against Nationwide in the Mahoning County Common Pleas Court. The complaint alleged the following causes of action against Nationwide concerning its Agency Executive (AE) Program: (1) breach of contract as to the AE Performance Agreement; (2) breach of contract regarding a Memorandum of Understanding; (3) fraudulent misrepresentation; (4) breach of contract as to the Independent Contractor Agent's Agreement; and (5) invasion of privacy and misappropriation of appellant's name.

{¶4} In July 2010, appellant discharged Fromson and continued with Groedel's legal representation. Appellant alleges that prior to this discharge, Fromson and Groedel were working under a compensation agreement entitling them to 40% of any gross recovery of damages against Nationwide. Exhibit K of Groedel's trial exhibits contains the contingency fee agreement that appellant signed with Groedel on July 12, 2010.

{¶5} In the *Nationwide* case, the trial court granted Nationwide's motion for a directed verdict on appellant's fraudulent misrepresentation claim. However, the jury found in appellant's favor on all other claims and awarded her over $42 million. The trial

court applied statutory caps on damages and reduced the judgment to $14,167,010.00. The court also awarded $187,546.50 in attorney fees and $21,557.64 in costs.

**{¶6}** Both Nationwide and appellant appealed to this Court in 2013, with Groedel also representing appellant on appeal. On December 17, 2015, we issued a decision affirming in part and reversing in part the trial court. *Lucarell v. Nationwide Mut. Ins. Co.,* 7th Dist. Mahoning Nos. 13 MA 74, 13 MA 133, 2015-Ohio-5286. We reversed the trial court's directed verdict on appellant's fraud claim. *Id.* We further found that while the trial court erred by failing to instruct the jury on the clear and convincing burden of proof for duress on the breach of contract claims, this error was harmless.

**{¶7}** We affirmed the trial court's judgment on appellant's breach of contract claims, the award of attorney fees, and prejudgment interest, as well as the $10.00 in nominal damages and $100,000.00 in emotional distress damages on the invasion of privacy claim*. Lucarell v. Nationwide Mut. Ins. Co., supra.* We held that appellant's total award was $2,375,708.28, plus attorney fees and prejudgment interest. The award included $100,010.00 in actual damages and $200,020.00 in punitive damages on the invasion of privacy claim. *Id.* at ¶ 190. We reduced the jury's punitive damages award on the invasion of privacy claim to the statutory cap of twice the compensatory damages, or $200,020.00.

**{¶8}** After this appeal, appellant discharged Groedel. She then rehired Fromson, and hired her current counsel and others to appeal to the Ohio Supreme Court. The Court accepted the appeal for review.

**{¶9}** On January 4, 2018, the Ohio Supreme Court affirmed in part and reversed in part our decision. The Court noted that "Nationwide did not appeal the judgment on the invasion of privacy claim, its counterclaim on the note, or the award of attorney's fees and costs, and Lucarell did not appeal the dismissal of her constructive discharge and retaliation claims." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 69. The Court therefore made no ruling on those claims. The Court ultimately remanded the case to us on appellant's breach of contract claims to determine whether to allow a new trial on those claims.

**{¶10}** After the mandate with remand instructions, Groedel filed a motion with our Court to reopen the *Nationwide* case. She asserted that we should reopen the appeal so that the attorney fees, prejudgment interest, and costs could be resolved and so that she

could petition for additional attorney fees from April 9, 2013 through the date that Nationwide paid the attorney fees it stipulated to pay Groedel, which was the $187,546.50 in attorney fees and $21,557.64 in costs.

{¶11} On March 5, 2019, we overruled the motion to reopen the appeal. *Lucarell v. Nationwide Mut. Ins. Co.*, 7th Dist. Mahoning Nos. 13 MA 74, 13 MA 133. We held that Groedel withdrew as counsel on March 2, 2016 and she therefore had no standing to file and litigate the motion to reopen since she was neither a party nor counsel for a party. *Id.* We further found that even if Groedel had standing, the motion to reopen was moot because the Ohio Supreme Court had already remanded the case to us for further proceedings. *Id.*

{¶12} While her case was pending with us on remand, appellant's current counsel, and Attorney Patricia A. Morris and Fromson, secured a settlement for her with Nationwide. The settlement details are under seal.

{¶13} On October 22, 2019, appellant filed a complaint for declaratory judgment in the Mahoning County Common Pleas Court as to her obligations to pay attorney fees to Fromson and Groedel from the *Nationwide* case. Fromson and Groedel answered appellant's complaint and Groedel filed a counterclaim for attorney fees owed.

{¶14} Appellant filed a motion for partial summary judgment asserting that Groedel was not entitled to any attorney fees since we overruled her motion to reopen the appeal. Appellant alternatively asserted that the trial court should find as a matter of law that Groedel was entitled to attorney fees only as to the successful claims before the Ohio Supreme Court.

{¶15} Mahoning County Common Pleas Court Magistrate Welsh held a hearing on the motion and overruled the motion. He found that appellant misconstrued our decision overruling Groedel's motion to reopen the appeal. He found our holding to mean that Groedel could not pursue her fee claim in the *Nationwide* case because she was not a party or counsel in that case and she therefore lacked standing to collect attorney fees from Nationwide. Magistrate Welsh held that Groedel did have standing in the instant case because she was a party and had been former counsel for appellant.

{¶16} Magistrate Welsh also noted that appellant ultimately settled all of her claims with Nationwide, and even though some of the aspects of the underlying case were never appealed, there were causes of action remaining that had not been determined

when the settlement occurred. Magistrate Welsh reasoned that determining the extent, if any, that the remaining causes of action had on settlement of the *Nationwide* case was an issue for a trier of fact to determine.

**{¶17}** Magistrate Welsh subsequently held a bench trial on April 21, 2021, with appellant, Fromson, Attorney Matthew Ries, Groedel, and Attorney Randy Hart testifying. The parties thereafter submitted post-trial briefs.

**{¶18}** Relevant parts of the trial included Groedel's testimony that her contingency agreement with appellant provided that she and her firm were entitled to "40% of the value of that which we recover on your behalf by settlement or verdict, plus costs." (Groedel Exhibit K at 1). The agreement further stated, "[i]f we are unable to complete our representation of you for any reason, then we will be paid a quantum meruit amount of money for the work we have performed…" (Groedel Exhibit K at 3).

**{¶19}** Fromson testified that he also had a contingent fee agreement with appellant, but he could not produce it because he left it at Groedel's office when they were working on the complaint and discovery. (Tr. at 3). He testified that he was entitled to an attorney fee from the invasion of privacy claim and from the stipulated Nationwide attorney fee, to the extent that it related to the invasion of privacy claim. (Tr. at 72-73). He also testified that he kept no billing records as to time spent on the case because he had a contingency-fee agreement with appellant. (Tr. at 159).

**{¶20}** Appellant testified that she retained Fromson on a contingency basis in 2009. (Tr. at 257). She stated that Fromson performed a great deal of work prior to the hiring of Groedel, and she believed Fromson was entitled to a portion of the attorney fee for the successful invasion of privacy claim. (Tr. at 373, 388). Appellant further testified that she was willing to pay Groedel and Fromson attorney fees for the invasion of privacy claim. (Tr. at 388).

**{¶21}** Groedel testified that she and Fromson had known each other for years and she had done prior work for him. (Tr. at 468). She stated that she met with Fromson in January 2010 concerning possible cases against Nationwide by agents, including appellant. (Tr. at 471). She stated that Fromson knew of her expertise in employment cases and they thereafter met with appellant on January 13, 2010. (Tr. at 477). She testified that she began work on appellant's case, but wanted a co-counseling agreement

with Fromson and her name as co-counsel on all fee agreements with clients. (Tr. at 481-483).

**{¶22}** Groedel testified that by March 22, 2010, she and Fromson had not agreed on a co-counseling agreement and she and her firm had done all of the work on the complaint and discovery, but would not file them without a co-counseling arrangement. (Tr. at 486-488). Groedel testified that she sent the complaint to Fromson only for review since he was listed as counsel on the case at that time. (Tr. at 493). She stated that she rejected his proposed co-counsel agreement and he then told her that he did not want to work with her. (Tr. at 496). She testified that appellant kept calling her and she told appellant that she had to choose who she wanted as counsel. (Tr. at 496). Appellant chose Groedel and discharged Fromson.

**{¶23}** On July 16, 2021, Magistrate Welsh issued his decision with findings of fact and conclusions of law. He cited *Reid, Johnson, Downers, Andrachik & Webster v. Landberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994), where the Ohio Supreme Court set forth the law on compensating discharged attorneys and announced factors that a court should consider when determining the amount of attorney fees to award.

**{¶24}** Magistrate Welsh noted that Groedel and Fromson had prior contingency fee agreements with appellant, and Fromson had been paid for his post-discharge services in helping to settle the *Nationwide* case and representing appellant before the Ohio Supreme Court. Magistrate Welsh agreed with appellant that her claim for the prior award of legal fees belonged to her, as she was the real party in interest. However, he found that Groedel successfully pursued those legal fees on behalf of appellant and met the contingency set forth in her contingency agreement with appellant. Magistrate Welsh accordingly found that the stipulated award of legal fees in *Nationwide* should be considered when calculating the amount of legal fees due Groedel and Fromson.

**{¶25}** Magistrate Welsh reviewed the *Reid* factors, considering the content of the complaint in the *Nationwide* case and Fromson's representation of appellant prior to filing the complaint. He reviewed Fromson's help in drafting the complaint and his role in securing Groedel as co-counsel. Magistrate Welsh also considered Groedel's certification and expertise in labor and employment law, the significant time and skill involved in the litigation against Nationwide, and the 975 hours that Groedel documented and testified to concerning the time spent on the case.

Case No. 22 MA 0005

**{¶26}** Magistrate Welsh held that he could not award attorney fees to Groedel from appellant's ultimate settlement of the case because doing so would be purely speculative. He reasoned that it was impossible to determine whether Groedel's work on the case contributed to the settlement, or the amount of hours spent and fees relating to Groedel's work that could be attributed toward the settlement.

**{¶27}** Accordingly, Magistrate Welsh found that appellant's total amount of recovery due to the efforts of Fromson and Groedel was $487,576.50, which was the $187,546.50 stipulated attorney fee and the invasion of privacy verdict and punitive damages of $300,030.00. Taking all factors into consideration, Magistrate Welsh concluded that Groedel was entitled to $125,000.00 in attorney fees and Fromson was entitled to $25,000.00 in attorney fees.

**{¶28}** Appellant, Fromson, and Groedel filed objections to the magistrate's decision. On January 14, 2022, the trial court issued a judgment stating that it had reviewed the objections, the trial record, and Magistrate Welsh's decision and adopted it in part, rejected it in part, and modified the magistrate's decision. The court adopted Magistrate Welsh's findings of fact to the extent that they were not modified by the court's conclusions of law.

**{¶29}** The trial court agreed that the total amount of recovery realized by appellant due to the efforts of Fromson and Groedel was $487,576.50. In its conclusions of law, the trial court indicated that reasonable attorney fees were to be determined under *Reid, as modified by Phoenix Lighting Grp., LLC. V. Genlyte Thomas Grp., LLC,* 160 Ohio St.3d 32, 2020-Ohio-1056. The court noted that the attorneys had to base their claims on quantum meruit.

**{¶30}** The trial court held that while Groedel's efforts may have warranted an enhancement of the lodestar amount, "the only element that realistically represents the amount of reasonable attorney fees is the contingent structure of the fee between plaintiff and the Groedel defendants." The court concluded that Groedel was therefore entitled to 40% of the $487,576.50 recovery, which equaled $195,030.60.

**{¶31}** The court concluded that Fromson was entitled to no attorney fees "because, as a matter of law, he has failed to provide his contribution" to appellant's recovery.

Case No. 22 MA 0005

**{¶32}** Appellant appealed the trial court's decision awarding attorney fees to Groedel. Groedel and Fromson filed cross-appeals.

## Appellant's (Lucarell/Oliver) Assignment of Error Number 1

**{¶33}** Appellant presents two assignments of error on appeal. In her first assignment of error, appellant asserts:

**The Seventh District Court of Appeals Has Already Ruled That The Attorneys' Fees at Issue Here Belong To Oliver And Not To Any Of The Lawyers In The Case.**

**{¶34}** Appellant asserts that the trial court erred by finding that Groedel was entitled to part of the $187,546.50 attorney fee award. She contends that if Groedel and Fromson are entitled to attorney fees, it should be based only upon the invasion of privacy recovery. Appellant submits that the doctrines of collateral estoppel and the law of the case apply.

**{¶35}** Appellant cites our decision denying Groedel's motion to reopen the *Nationwide* case and points out that we italicized the words "party" and "prevailing party" when we cited cases holding that attorney fees belong to the client and not the attorney. Appellant also notes that we relied on *Parker v. J&F Insulation Co.*, 89 Ohio St.3d 261, 268, 2000-Ohio-151, for the proposition that "post judgment interest on attorney fees aids in making the *prevailing party* whole * * * ." Appellant indicates that Groedel did not appeal our ruling on her motion to reopen and therefore the issue of attorney fees has been decided.

**{¶36}** Groedel counters that Nationwide stipulated to the attorney fee award which resulted exclusively from her work. She cites her fee agreement with appellant, which specifically stated that, "all attorney's fees awarded by the court will be included as a component of the total recovery" upon which the 40% contingency fee was based. Groedel also asserts that our decision denying her motion to reopen in the *Nationwide* case is irrelevant to this case. She explains that there, we held that Groedel could not pursue a personal claim for attorney fees against Nationwide because she was not a party to that case and she was no longer counsel for a party. Groedel submits that she and her

firm are parties in this case and are suing appellant for attorney fees for services rendered.

**{¶37}** Groedel further asserts that her attorney fee should include a portion of the prejudgment interest award and a portion of appellant's settlement recovery in the *Nationwide* case. Citing *Dickson & Campbell, L.L.C., v. Marshall,* 8th Dist. No. 106289, 2018-Ohio-2233, ¶ 12, she contends that the only leverage appellant had in obtaining a settlement with Nationwide was due to her legal work on the breach of contract claims which she conceived, advanced, supported, presented to the jury, and argued in post-trial motions and on appeal. She submits that this was the only work upon which the settlement was based since it resulted in a remand to this Court. She concludes that she should receive at least 95% of her contingency fee from the settlement recovery.

**{¶38}** Groedel also submits that even if appellant is correct that attorney fees are recovered only on successful claims, the trial court awarded appellant attorney fees solely based on issues that prevailed in the case. Groedel explains that Nationwide stipulated to the attorney fee award, which was upheld on appeal, and no further appeal was filed. Groedel also notes that this Court affirmed the pre-discharge prejudgment interest award and no further appeal was filed.

**{¶39}** Groedel further argues that Fromson is not entitled to attorney fees beyond those he already collected. She contends that Fromson performed no work on the invasion of privacy claim and he admitted that he kept no time records for legal services provided to appellant.

**{¶40}** This Court applies a de novo standard of review in determining whether a court properly applied the law of the case doctrine. *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 13, *citing Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 17. We also apply a de novo standard of review when reviewing a trial court's application of collateral estoppel. *State v. Hill*, 177 Ohio App.3d 171, 2008-Ohio-3509, 894 N.E.2d 108, ¶ 37 (11th Dist.).

**{¶41}** We find that our decision overruling Groedel's motion to reopen the *Nationwide* case has no bearing on the instant case. In that case, we held that Groedel had no standing to file her motion for attorney fees. *Lucarell v. Nationwide Mut. Ins. Co.,* 7th Dist. Mahoning Nos. 13MA74, 13MA133. We held that Groedel was not a party to the *Nationwide* case and was no longer counsel for a party. *Id.* We further held that even if

Groedel had standing, the Ohio Supreme Court had already remanded the case to our Court and therefore a motion to reopen the appeal was not necessary. *Id.* We stated that "Attorney Groedel is seeking to reopen the appeal in order to pursue a personal claim for attorney fees. A claim for attorney fees within a civil case belongs to a party, not to any particular attorney that may have made an appearance in the action." *Id.* We therefore held that Groedel had no standing to file her claim for attorney fees in the case between appellant and Nationwide.

**{¶42}** The law of the case doctrine states that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). Although not a rule of law, it is necessary "to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15 citing *State ex rel. Potain v. Mathews*, 59 Ohio St.2d 29, 32, 391 N.E.2d 343 (1979).

**{¶43}** The instant case is not the same case as the *Nationwide* case. As we held in denying Groedel's motion to reopen the *Nationwide* case, she was not a party to that case and the case had already been remanded to us by the Ohio Supreme Court. "The law-of-the-case doctrine requires a court to follow rulings on issues previously resolved within the same case." *Reid v. Cleveland Police Dept.*, 151 Ohio St.3d 243, 2017-Ohio-7527, 87 N.E.3d 1231, ¶ 11. The instant case is a new case in which Groedel is a party and is suing appellant for attorney fees. The *Nationwide* case was between appellant and Nationwide and concerned issues different from those in the instant case. Accordingly, the law of the case doctrine does not apply.

**{¶44}** We also find that collateral estoppel does not apply. Collateral estoppel, or issue preclusion, "prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit." *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917 (1994). The doctrine applies when the fact or issue: "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Id. See also McCabe Corp. v. Ohio Environmental Protection Agency*, 10th Dist. Franklin No. 12AP-204, 2012-

Ohio-6256, 2012 WL 6738651, ¶ 19 ("[T]he elements of issue preclusion under Ohio law are that: (1) the identical issue or fact was actually and directly at issue in a previous action; (2) the issue or fact was passed upon and determined by a court of competent jurisdiction; (3) the issue or fact was actually litigated, directly determined, and essential to the final judgment in the prior action; and (4) both actions involved the same parties, or their privies.").

**{¶45}** Applying the collateral estoppel elements, the issue of Groedel's right to attorney fees was not actually and directly litigated in the *Nationwide* case. While Groedel filed a motion to reopen the appeal in that case, we did not rule on whether she was entitled to attorney fees. Rather, we held that she did not have standing to file the motion in a case in which she was not party or counsel for a party. Further, the issue of attorney fees was not actually litigated or directly determined, and was not necessary to the final judgment in the *Nationwide* case. Moreover, we held that Groedel was not a party in the *Nationwide* case and had no standing. The instant case is between appellant, Fromson, and Groedel only.

**{¶46}** Accordingly, appellant's first assignment of error lacks merit and is overruled.

### Appellant's Assignment of Error Number 2

**{¶47}** In her second assignment of error, appellant asserts:

**The Trial Court Erred In Awarding Groedel Attorneys' Fees Which Were Based On Issues and a Judgment Which Did Not Prevail.**

**{¶48}** Appellant acknowledges that a discharged contingent-fee attorney is entitled to recover attorney fees on the basis of quantum meruit. However, citing *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431, she contends that attorney fees under quantum meruit arise only "upon the successful occurrence of the contingency." Appellant contends that there was no such occurrence in the *Nationwide* case.

**{¶49}** Appellant submits that she did not prevail on any of her claims before the Ohio Supreme Court. She contends that the Ohio Supreme Court essentially overturned her entire award in the *Nationwide* case, except for her invasion of privacy claim. As to

that claim, appellant notes that the Court took no action on it as it was not challenged on appeal. She concludes that Groedel was therefore not successful on any claims.

{¶50} She further contends that while the Court reinstated a directed verdict on her fraud claim and remanded her breach of contract claims for further determination on the issue of duress, her current lawyers would have had to develop new evidence as to these claims since the Court found that Groedel presented "scant evidence" concerning those claims. She notes that the Court also commented on Groedel's limited contribution when it held that "in light of the limited evidence in the record, the failure to instruct the jury on the heightened standard of proof was prejudicial. Accordingly, if the Court of Appeals holds on remand that the trial court did not err in allowing the contract claims to go to the jury, a new trial is required based upon the erroneous jury instruction on duress." *Id.* at ¶ 60.

{¶51} Appellant further asserts that under *Reid,* the client has an obligation to compensate discharged counsel only for services rendered prior to the discharge. She notes that the number of hours worked prior to discharge is only one factor for a court to consider and the court should consider the other factors outlined in *Reid*, such as the recovery sought, the skill demanded, the results obtained, and the contingency fee agreement itself. Appellant contends that Magistrate Welsh attempted to properly apply the *Reid* factors to determine a reasonable attorney fee, but the trial court rejected this application and instead applied the contingency fee agreement, which is prohibited under *Reid.*

{¶52} Appellant also submits that Groedel is not entitled to any part of the $187,546.50 stipulated attorney fees from the *Nationwide* case. She contends that Nationwide's stipulation was only that the amount of the fees was reasonable. She points out that the stipulation specifically stated that, "[i]t is further understood that this stipulation is submitted only as to the reasonableness of the fees and expenses and is not a stipulation as to [Nationwide's] liability. [Nationwide] retains the rights to challenge the jury's fee award in post-trial proceedings and on appeal." (Trial Exhibit S). Appellant argues that Groedel is not entitled to these attorney fees because Civ. R. 60(B)(4) still allows a motion for relief from judgment when the judgment has been reversed or otherwise vacated. She contends that the fact that the issue was not appealed does not mean that it was not subject to later revision or reduction. Appellant further asserts that

Case No. 22 MA 0005

her current counsel, not Groedel, was responsible for requiring Nationwide to keep the attorney fee stipulation and at the very least, this shows that Groedel is not 100% responsible for that award since it was not appealed.

**{¶53}** Appellant also contends that neither Fromson nor Groedel met their burden of establishing the hours of work spent solely on the winning invasion of privacy claim. Thus, she asserts, they are entitled to nothing.

**{¶54}** Alternatively, appellant asserts that if the invasion of privacy judgment is considered successful, Groedel only performed a marginal amount of work on it because it was primarily based on Fromson's work. She cites the testimony of Attorney Matthew Ries, who was employed by Groedel and worked as lead counsel on her case until trial began. She cites Ries's testimony that the evidence used to support the invasion of privacy claim was based mainly upon appellant's testimony and the testimony of Daniel Baker, a Nationwide employee who was deposed by Fromson in a prior case. (Tr. at 174). Appellant notes that Ries identified only 14.5 hours of time from Groedel's billing records that could be attributed to appellant's case, although he admitted that even these records included time spent on an unrelated case. (Tr. at 175, 181, 185-187). Appellant further notes Ries's testimony that the billing records were not broken down by time spent on each claim and it was not possible to determine by fee entry the time spent on more than one activity or claim. (Tr. at 184, 187).

**{¶55}** Groedel contends that appellant misconstrues the law that a contingent-fee discharged attorney can only recover on successful judgments. She notes that a number of cases settle before going to court and discharged attorneys would not be entitled to any attorney fees in such a case under appellant's theory. Groedel submits that the *Reid* holding that "fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency," means that a quantum meruit claim does not ripen until the contingency occurs and not that the claims have to be successful judgments in order to recover an attorney fee. Groedel posits that attorney fees under this doctrine are based on the value of the services and not whether the claim ultimately prevails.

**{¶56}** Groedel also cites *Reid* and other cases for support that a discharged contingent-fee attorney may recover the amount provided for in the disavowed contingent fee agreement when a client discharges the attorney after the attorney successfully obtains judgment awards.

Case No. 22 MA 0005

**{¶57}** Groedel further submits the trial court awarded attorney fees only on the successful invasion of privacy claim and the $187,546.50 stipulated attorney fee award which Groedel exclusively procured. She asserts that she clearly met the burden of proof warranting attorney fees based upon the record in the *Nationwide* case, which shows the skill and effort spent as to her legal services and the meticulous time-keeping records of her work.

**{¶58}** As to Fromson, Groedel contends that he performed little to no work on the case as he was discharged immediately after the filing of the original complaint. Groedel asserts that Fromson also had no time or billing records for any services allegedly provided to appellant. She cites the *Reid* holding that even an attorney operating under a contingent-fee agreement should keep accurate time records because an attorney can be discharged and needs proof of his effort in order to obtain fees.

**{¶59}** Groedel contends that she and her firm alone conceived of and formulated the invasion of privacy claim. She explains that she was familiar with such a clam from her prior legal experiences in Maryland and the District of Columbia and she asked an independent researcher to confirm that Ohio recognized such a claim. She also challenges appellant's credibility concerning her testimony and statements of Fromson's extensive legal work on her case. Groedel notes that appellant complained that Fromson had performed little work with her case and had presented the same claim as appellant in a prior case. She notes that Fromson's prior case was a single breach of contract claim and she helped him prepare for the deposition of Daniel Baker in that case. She points out that the deposition of Baker in appellant's *Nationwide* case occurred two years later.

**{¶60}** Finally, Groedel submits that the attorney fee award in the *Nationwide* case was not subject to further review, as appellant claimed. She asserts that Nationwide did not appeal the stipulated fee award that was exclusively for her legal services in that case. She further contends that even if the award was subject to further review, her success on the invasion of privacy claim established a successful result on all claims for attorney fee purposes, even if the other claims were not successful. *Hollingsworth v. Time Warner Cable,* 168 Ohio App.3d 658, 2006-Ohio-4903 (1st Dist. 2006).

**{¶61}** "In light of the fact-specific nature of the inquiry and the equitable balancing involved, a court's decision to award attorney fees on a quantum meruit basis is reviewable only for an abuse of discretion." *Dickson & Campbell L.L.C. v. Marshall,* 8th

Dist. Cuyahoga No. 106289, 2018-Ohio-2233, ¶ 10. "[T]he term 'abuse of discretion' implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "Decisions are unreasonable if they are not supported by a sound reasoning process." *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 300, 741 N.E.2d 155 (2d Dist.2000), quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶62}** A client who has a contingent fee agreement with an attorney can discharge the attorney prior to resolution of the case. The discharged attorney in such a case cannot recover attorney fees pursuant to the contingency agreement. However, the attorney can recover for legal services rendered under the theory of quantum meruit for the reasonable value of her services provided up through the time that she is discharged. *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994); *Fox & Associates Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 541 N.E.2d 448 (1989), syllabus. In order to advance a claim for attorney's fees under quantum meruit, the contingency must have successfully occurred. *Id.* at 576. Moreover, the attorney fees recovered under quantum meruit are limited to the amount set forth in the disavowed contingency agreement. *Id.*

**{¶63}** In determining the reasonable value of a discharged attorney's legal services rendered pursuant to a contingency fee agreement, the court considers the totality of the circumstances surrounding the situation, including: "[t]he number of hours worked by the attorney before the discharge[,] * * * the recovery sought, the skill demanded, the results obtained, and the attorney-client relationship itself." *Pipino v. Norman*, 7th Dist. Mahoning No. 16 MA 0153, 2017-Ohio-9048, ¶ 30, quoting *Reid*, at 576-577. Courts may also consider the factors for determining the reasonableness of fees used by the rules governing attorney conduct. *Id.* at 576–577, 629 N.E.2d 431. "Quantum meruit can be used whether there is an express contract for fees (written or oral) or where there is no express contract for fees (i.e., there is an implied contract)." *Id.*

**{¶64}** The trial court held that Groedel was entitled to $195,030.60 in attorney fees and Fromson was entitled to no attorney fees. The court cited *Reid* and held that the contingency fee agreement between appellant and Groedel was the only evidence that realistically represented a reasonable attorney fee. The court added the stipulated

attorney fee amount of $187,546.50 to the $300,030.00 recovery on the invasion of privacy claim and multiplied 40% by that total, which was the percentage provided for in the contingency fee agreement. The court awarded the $195,030.60 solely to Groedel.

{¶65}   We find that the trial court did not abuse its discretion. The trial court properly found that quantum meruit was the means for recovery of contingent-fee attorneys who are discharged prior to completion of the case. "When an attorney is discharged by a client with or without just cause and whether the contract between the attorney and client is express or implied, the attorney is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit." *Fox & Associates Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 541 N.E.2d 448 (1989), syllabus.

{¶66}   We further find that a successful occurrence of the contingency occurred in this case. In *Pipino,* we held that, "[a]s the *Reid* case added, when a client terminates an attorney with a contingency fee agreement, the attorney's cause of action for quantum meruit arises on the successful occurrence of the contingency, e.g., the discharged attorney can recover after the client recovers in the underlying case and the attorney is usually not compensated if the client recovers nothing." *Pipino v. Norman*, 7th Dist. Mahoning No. 16 MA 0153, 2017-Ohio-9048, ¶ 30, citing *Reid,* 68 Ohio St.3d at 575-576, 629 N.E.2d 431 [emphasis added].

{¶67}   Here, appellant recovered on the invasion of privacy claim, and she was awarded punitive damages related to that claim, stipulated attorney fees, and prejudgment interest. Thus, a successful contingency occurred.

{¶68}   Moreover, the trial court did not err in using the attorney fee provided in a contingency fee agreement as a guide for awarding attorney fees to a discharged contingent-fee attorney. *Law Offices of Russell A. Kelm v. Selby*, 10th Dist. Franklin No. 15AP-1135, 2017-Ohio-8239, ¶ 30 (no abuse of discretion by trial court in valuing attorney fee award under quantum meruit on earlier contingency agreement). While a discharged contingent-fee attorney cannot recover attorney fees pursuant to the contingency fee agreement, courts may use that agreement to help value the legal services rendered by the attorney. As to determining attorney fees in such circumstances, the Court held in *Fox* that, "* * * the maximum reach of its right to fees, with regard to the client, is the reasonable

value of the legal services actually rendered to the date of discharge." 44 Ohio St.3d at 72, 541 N.E.2d at 450.

{¶69} The trial court aptly explained that it used the 40% contingency fee contract between Groedel and appellant only as a guide. The court adopted the findings of fact set forth by Magistrate Welsh to the extent that they were not modified by the court's conclusions of law. Magistrate Welsh thoroughly reviewed the *Reid* factors, specifically finding that Groedel secured the invasion of privacy recovery for appellant, she meticulously maintained billing records on the hours she expended, she had expertise in employment cases, the case was complex, and she expended a great number of hours on the case representing appellant through trial and on appeal.

{¶70} We also find that the trial court did not abuse its discretion by additionally awarding Groedel attorney fees based on quantum meruit from the stipulation by Nationwide to $187,546.50 in attorney fees through trial. Again, the trial court adopted Magistrate Welsh's findings of fact regarding this award and applied the 40% contingency fee as a guide. Magistrate Welsh noted that Groedel secured this stipulation, she kept meticulous billing records, she had expertise in labor cases, the case was complex, and Groedel spent a great number of hours on the case. The trial court adopted Magistrate Welsh's findings to the extent that they correlated with the court's conclusions of law.

{¶71} We reject appellant's assertion that Groedel is not entitled to any of the stipulated fee award because Nationwide can still challenge this award under Civ. R. 60(b)(4). The stipulation between appellant and Nationwide does state that Nationwide "retains the rights to challenge the jury's fee award in post-trial proceedings and on appeal." (Groedel's Trial Exhibit S). However, the $187,546.50 fee was not appealed and was included as part of the ultimate settlement between appellant and Nationwide. It is therefore not error to include a portion of this amount in the trial court's quantum meruit award.

{¶72} We also reject appellant's assertions that awarding Groedel attorney fees on losing claims results in a windfall to Groedel. The trial court did not award Groedel on any claim other than invasion of privacy and the stipulated attorney fee award. Thus, even if quantum meruit as to attorney fees only applies to successful claims, the trial court did not abuse its discretion in the attorney fee award to Groedel in this case.

Case No. 22 MA 0005

**{¶73}** In sum, we find that the trial court did not abuse its discretion by applying quantum meruit to award attorney fees, using the contingency fee agreement as a guide for awarding fees, and awarding Groedel attorney fees based upon the invasion of privacy recovery and the stipulated attorney fee award.

**{¶74}** Accordingly, appellant's second assignment of error lacks merit and is overruled.

### Groedel's Cross-Assignment of Error

**{¶75}** Groedel's assignment of error on cross-appeal states:

> **The trial court abused its discretion in determining that only $487,576.50 of Lucarell's total recovery was attributable to CG&A's legal services, and thus, erroneously limited CG&A's quantum meruit recovery to $195,030.60.**

**{¶76}** Groedel contends that pursuant to *Reid*, a trial court must consider the totality of the circumstances in determining an attorney fee pursuant to quantum meruit. She asserts that the trial court did not consider all relevant circumstances because it failed to award her an attorney fee from appellant's prejudgment interest award. Groedel points out that the prejudgment interest award of 3% per annum with interest commencing July 7, 2009 was not subject to further appeal and the trial court should have awarded her the full 40% contingency fee on this amount. (Groedel Trial Exhibits U, V). Groedel submits that Nationwide stipulated to the prejudgment interest award and this was a final award that resulted exclusively from Groedel's work.

**{¶77}** Groedel further asserts the trial court also erred by not awarding attorney fees from appellant's ultimate settlement with Nationwide. Groedel asserts that quantum meruit recovery is not limited to pre-settlement money judgments that occurred prior to the discharge of the attorney. Citing *Dickson v. Campbell, L.L.C. v. Marshall*, 8th Dist. Cuyahoga No. 106289, 2018-Ohio-2233, ¶ 12, she asserts that if a client benefits from the discharged attorney's legal services after discharge, the discharged attorney should be compensated based on any ultimate settlement in the case as well, even if new counsel negotiated the settlement. She cites *Pipino v. Norman*, 7th Dist. Mahoning No.

16 MA 0153, 2017-Ohio-9048, 101 N.E.3d 597 where we applied the Eighth District's holding in *Redmond v. Sberna*, 8th Dist. No. 68529, 1996 WL 273764 (May 23, 1996):

> The measure of the benefit provided by the services of the attorneys in a quantum meruit action such as this is measured by the benefit provided to the client. * * * Clients who receive monetary settlements after discharging their attorneys benefit from the services their attorneys performed prior to discharge. The extent to which they benefitted is left to the discretion of the trial judge.

**{¶78}** Groedel also cites *Kaushiva v. Hutter*, 454 A.2d 1373 (D.C.App. 1983), and *Fox, Supra,* 44 Ohio St.3d 69, 724, 541 N.E.2d 448 (1989), to assert that a discharged contingent-fee attorney may be entitled to the full contingency on the settlement amount where the attorney substantially performs and the client prevents the attorney from completing performance by terminating the relationship after the legal services that generated the value of the case.

**{¶79}** Groedel asserts that her work was appellant's exclusive leverage for securing the settlement with Nationwide since the only claim that survived in the Ohio Supreme Court was the breach of contract claims that she had conceived of and advanced at trial, in post-trial motions, and on appeal. She posits that but for her work on these claims, the case would have concluded in the Ohio Supreme Court and no settlement would exist.

**{¶80}** Appellant counters that Groedel's prejudgment interest argument makes no sense because prejudgment interest was awarded by the trial court based on all of the claims that Groedel successfully tried, and she prevailed only on the invasion of privacy claim. Appellant further contends that there is no indication that Nationwide ever paid prejudgment interest and there is no evidence that prejudgment interest was part of the settlement entered into by Nationwide and appellant.

**{¶81}** Appellant also contends that Groedel is not entitled to attorney fees on the ultimate settlement in the *Nationwide* case. She cites to the Ohio Supreme Court's mention of the "limited evidence" presented in the record and the "scant evidence" presented and notes that this evidence was that presented by Groedel. She contends that her case was remanded to our Court to either remand the case to the trial court for a

new trial on the breach of contract and duress issue or to find that the trial court erred in allowing these claims to go to the jury. Appellant opines that if we would have found that the trial court erred in allowing these claims to go to the jury, Groedel had no other work to do and her attorney award was sufficient. If we decided that a new trial was warranted, appellant argues that her new counsel would have to perform additional work because Groedel's work was "scant" and "limited." She concludes that this establishes that the breach of contract claims could not have contributed to the settlement with Nationwide. She also notes that *Reid* allows for the compensation of a discharged contingent fee attorney for legal services rendered only *prior* to the time of discharge.

**{¶82}** Magistrate Welsh did not address the prejudgment interest award in his decision, although the issue was discussed at trial. (Tr. at 501). Groedel also raised this issue in her objections to the magistrate's decision. However, the trial court did not address prejudgment interest in its decision and did not state its rulings on the objections. Rather, the trial court stated that it was adopting in part, rejecting in part, and modifying Magistrate Welsh's decision.

**{¶83}** After the jury trial in *Nationwide*, Groedel filed a motion for prejudgment interest under R.C. 1343.03 and the trial court granted the motion. The court found that Nationwide failed to act in good faith in trying to settle the case and that appellant did not fail to make a good faith effort to settle. We affirmed the prejudgment interest award on appeal. No further appeals were filed on the interest awards. In this case, while the trial court adopted the magistrate's findings to the extent not modified, Magistrate Welsh did not address whether attorney fees should be awarded based on quantum meruit on appellant's award of prejudgment interest. We agree with Groedel that this needs to be addressed.

**{¶84}** The trial court also failed to address whether Groedel was entitled to a quantum meruit award from appellant's ultimate settlement in the *Nationwide case*. However, the trial court adopted Magistrate Welsh's findings to the extent not modified by its conclusions of law. The magistrate's decision addressed this issue and found that Groedel was not entitled to attorney fees on any part of the settlement. Magistrate Welsh reasoned that it was too speculative to determine the extent, if any, that Groedel's work and the breach of contract claims had on the settlement. Thus, the trial court adopted the magistrate's decision on this issue since it was not modified by the court. We find no

Case No. 22 MA 0005

abuse of discretion in denying Groedel a quantum meruit attorney fee recovery on any settlement amount secured by appellant.

**{¶85}** In sum, we find that the trial court erred by failing to address whether Groedel was entitled to attorney fees from appellant's prejudgment interest award. There was no abuse of discretion in holding that Groedel was not entitled to attorney fees on the ultimate settlement in the *Nationwide* case.

**{¶86}** Accordingly, we find merit in part with Groedel's cross-assignment of error. We sustain that part of Groedel's assignment of error concerning the lack of a ruling on her entitlement to a portion of appellant's prejudgment interest awards. We overrule that part of Groedel's assignment asserting trial court error in denying her attorney fees from any settlement in the *Nationwide* case on the basis of quantum meruit.

### Fromson's Cross-Assignment of Error

**{¶87}** In his cross-appeal assignment of error, Fromson asserts that:

**The Trial Court Erred in Failing to Provide Fromson with Any *Quantum Meruit* Recovery of Attorneys' Fees for the Only Successful Claim – Invasion of Privacy.**

**{¶88}** Fromson contends that the trial court erred by not applying the same quantum meruit principles to his attorney fee claim as those applied to Groedel's claims. He asserts that he was not discharged at the outset of appellant's case against Nationwide as Groedel asserted and he performed work on the case.

**{¶89}** Citing to appellant's testimony and his own testimony before Magistrate Welsh, Fromson states that he had a contingency fee agreement with appellant and appellant hired him in 2009 as counsel for her claims against Nationwide. (Tr. at 25, 373-374). Fromson cites his testimony that he performed work on the case prior to bringing Groedel on the case in 2010. (Tr. at 25-28). He cites appellant's testimony that she brought him large boxes of documents and 450 emails to review prior to meeting with Groedel. (Tr. at 373-374). Fromson also cites his testimony that he helped draft the complaint in appellant's case and the complaint bore both his name and Groedel's name as counsel. (Tr. at 36-44). He asserts that he worked on discovery in the matter, sent settlement letters, and provided the relevant information, evidence, and claims for

appellant's case from a prior case he had handled against Nationwide for another agent. (Tr. at 48-53, 373-375).

**{¶90}** Fromson contends that the trial court must have used factors other than billing hours in determining that Groedel was entitled to $195,030.60 in attorney fees. He points out that Groedel's billing records showed only 11 hours of provable work on the invasion of privacy claim, and the court's award of $195,030.60 amounts to $17,727.27 per hour of work. Fromson concludes that the trial court must have therefore considered factors beyond hours worked in order to determine Groedel's attorney fee award.

**{¶91}** Groedel counters that the trial court did not abuse its discretion by awarding Fromson no attorney fees. She contends that Fromson performed no work on the invasion of privacy claim and there is no evidence establishing that he did. Groedel cites the holding in *Reid* that an attorney's number of hours worked is an important factor in determining the reasonable value of the attorney's services under quantum meruit and attorneys working under contingency fee agreements should keep time records because proof may be needed if they are discharged. She cites to Fromson's admission that he kept no billing records and notes that he could not even produce his contingency fee agreement with appellant at trial.

**{¶92}** Groedel asserts that she and her firm alone conceived of and performed all of the work on the invasion of privacy claim. She notes that she was familiar with such claims through her prior employment in Maryland and the District of Columbia. Groedel explains that she asked another lawyer to research such a claim to confirm that it existed.

**{¶93}** Groedel further contends that we should reject Fromson's discussion about reliance upon his work in a prior Nationwide case to assert that he is entitled to attorney fees in appellant's case. She indicates that Fromson has been paid in that case, she actually helped him in that case, and the case is publicly available for Groedel to have used in preparing appellant's case.

**{¶94}** As to any award of an attorney fee to Fromson from the $187,546.50 *Nationwide* stipulation, Groedel asserts that this is ludicrous. She contends that this fee was procured exclusively by her and Nationwide agreed to this fee based upon the exclusive work of her and her firm.

**{¶95}** Before the magistrate, Fromson testified that a contingency fee agreement existed with appellant, he had numerous meetings with appellant and others regarding

her case, and he reviewed a number of documents and emails. (Tr. at 25-44, 48-53, 373-374). He also explained that he had prior experience in a similar Nationwide case which he applied to appellant's case and he helped draft the complaint and discovery. (Tr. at 25-44, 48-53, 373-374). Both appellant and Groedel agreed at trial that Fromson provided some value to the invasion of privacy award with his work. (Tr. at 388, 554).

{¶96} Magistrate Welsh found that Fromson represented appellant for several months prior to getting Groedel involved and Fromson's initial representation involved client meetings, using and applying information that he procured from his prior Nationwide case, and preparing and filing the complaint. Magistrate Welsh considered the *Reid* factors and apportioned $125,000.00 in quantum meruit attorney fees to Groedel and $25,000.00 to Fromson.

{¶97} However, the trial court rejected the magistrate's decision as to Fromson and held that he was not entitled to attorney fees because he failed to establish his contribution to appellant's recovery. Civ. R. 53(b) and (d) allow the trial court to reject, accept, or modify the magistrate's decision and to conduct an independent review to determine if the magistrate properly determined the facts and properly applied the law.

{¶98} Further, we cannot find that the trial court's attitude in denying Fromson attorney fees on the basis of quantum meruit was unreasonable, arbitrary or unconscionable. Looking at the totality of the circumstances and the factors in *Reid*, the trial court acted reasonably in finding that Fromson's testimony before the magistrate was insufficient to establish his contribution.

{¶99} Contradictory testimony was presented at trial before the magistrate by Fromson and Groedel concerning their legal work in appellant's case. Fromson testified about his work on the Gina Scruggs case that he used in appellant's case and for which he had already been paid. (Tr. at 89, 134-135). He noted that the information that he obtained from Daniel Baker of Nationwide in the Scruggs case was instrumental for appellant's invasion of privacy claim. (Tr. at 89). However, testimony was presented that the information in the Scruggs case was not instrumental to the invasion of privacy claim and Groedel's firm deposed Baker for appellant's case. (Tr. at 89). Fromson also testified that he kept no record of the hours that he spent on appellant's case and he could not determine the number of hours that he worked on appellant's invasion of privacy claim apart from the other claims. (Tr. at 158-159, 184). He noted that he engaged Groedel on

Case No. 22 MA 0005

the case because she had special skill in these types of claims and he was not certified as a specialist in any legal area. (Tr. at 78, 82, 165). He also testified that appellant discharged his legal services early on in the case. (Tr. at 51-52).

{¶100} Further, emails between Fromson and Groedel challenged Fromson's testimony that he drafted the complaint in appellant's case and specifically the invasion of privacy claim. (Tr. at 84-99). Groedel testified that she drafted the complaint and discovery requests and merely sent them to Fromson for his review. (Tr. at 82-86, 482-483). Fromson testified that the facts that he developed and his complaint drafting were responsible for the invasion of privacy claim. (Tr. at 86-111). Groedel testified that after speaking with appellant about whether Nationwide was still representing that she was their agent, Groedel recalled from her employment practice in Maryland and the District of Columbia the tort claim of misappropriation of name and likeness. (Tr. at 486-488). She testified that she sent an email and asked a research assistant to research whether Ohio had a misappropriation of name and likeness claim or something similar. (Tr. at 488-489). She carbon-copied Fromson on the email and he responded to her that the only section he found research on was a breach of contract. (Tr. at 490). She testified that Fromson misunderstood her email as she was not asking for a breach of contract action but a tort action. (Tr. at 490). She also testified that Fromson brought only a breach of contract action in the Scruggs case and he attempted to amend that complaint after the invasion of privacy claim was created in appellant's complaint. (Tr. at 492).

{¶101} Based upon the trial court's review of the testimony, we find that the trial court did not abuse its discretion and could reasonably conclude that Fromson failed to establish his contribution to the invasion of privacy claim. Thus, he was not entitled to attorney fees on the basis of quantum meruit. We therefore find that Fromson's cross-assignment of error lacks merit.

{¶102} In conclusion, this Court finds no merit with appellant's assignments of error. We find merit in part with Groedel's cross-assignment of error. We find merit with that part of Groedel's assignment concerning trial court error in failing to rule whether Groedel was entitled to attorney fees from the award of prejudgment interest. We find no merit to that part of Groedel's assignment asserting trial court error in denying her attorney fees from appellant's settlement in the *Nationwide* case on the basis of quantum meruit. Finally, we find no merit to cross-appellant Fromson's assignment of error.

**{¶103}** Based on the foregoing, this matter is remanded to the trial court to address whether Groedel is entitled to attorney fees from the award of prejudgment interest on the basis of quantum meruit, and if so, the amount thereof.


Robb, J., concurs.

Nelson, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error by appellant/cross-appellee, Christine Oliver, fka Christine Lucarell, are overruled. The cross-assignment of error by appellees/cross-appellants Caryn Groedel, Esquire and Caryn Groedel Associates, L.P.A. Company is sustained in part and overruled in part. We sustain that part of Groedel's assignment concerning trial court error in failing to rule whether Groedel was entitled to attorney fees from the award of prejudgment interest. We overrule that part of Groedel's assignment asserting trial court error in denying her attorney fees from appellant's settlement in the *Nationwide* case. The cross-assignment of error by appellees/cross-appellants Scott Fromson, Esquire and A. Scott Fromson, Attorney at Law, Inc. is overruled. Costs to be taxed against all parties.

The judgment of the trial court is hereby affirmed and remanded to the trial court pursuant to law and consistent with this Court's Opinion. On remand, the trial court is to rule whether appellees/cross-appellants Caryn Groedel, Esquire and Caryn Groedel Associates, L.P.A. Company are entitled to attorney fees from the award of prejudgment interest on the basis of quantum meruit, and if so, the amount thereof.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy by sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**
**This document constitutes a final judgment entry.**

Case No. 22 MA 0005